**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CORUS BANKSHARES, INC.[1] | ) Case No. 10-26881 (PSH) |
|  | ) |
| Debtor. | ) |
|  | ) |

**MOTION FOR ENTRY OF AN ORDER APPROVING A STIPULATION BETWEEN THE DEBTOR AND THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER (I) ESTABLISHING A RESERVE ACCOUNT TO HOLD TAX REFUNDS PENDING FINAL ADJUDICATION OF OWNERSHIP, AND (II) MODIFYING THE AUTOMATIC STAY TO ALLOW THE FEDERAL DEPOSIT INSURANCE CORPORATION TO FILE TAX RETURNS**

The above-captioned debtor and debtor in possession (the "Debtor"), files this motion (the "Motion") pursuant to sections 105(a), 362, 363(b) and 541 of the Bankruptcy Code seeking entry of an order (the "Order") approving a stipulation between the Debtor and the Federal Deposit Insurance Corporation ("FDIC"), as Receiver, establishing a reserve account, and modifying the automatic stay to allow the FDIC to file certain tax returns, substantially in the form attached hereto as Exhibit A, and certain related relief.

In support of this Motion, the Debtor respectfully states as follows:

**Jurisdiction**

1.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.   Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]   The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Corus Bankshares, Inc. (3592). The location of the Debtor's corporate headquarters and the service address for the Debtor is: 10 S. Riverside Plaza, Suite 1800, Chicago, IL 60606.

K&E 17246734

3. The statutory bases for the relief requested herein are §§ 105(a), 362, 363(b), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules 3002 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

4. By this Motion, the Debtor respectfully requests the entry of the Order substantially in the form attached hereto as Exhibit A: (i) approving the Debtor's entry into a stipulation by and between the Debtor and the FDIC (the "Stipulation") a copy of which is attached as Attachment 1 to the Order, which would authorize the establishment of a segregated account for tax refund payments received from the Internal Revenue Service ("IRS"), and would permit the FDIC to file 2009 tax returns on behalf of Corus Bank; and (ii) granting certain related relief.

## Background

5. On June 15, 2010 (the "Petition Date"), the Debtor filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code [Docket No. 1]. The Debtor continues to operate its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On June 29, 2010, the United States Trustee for the Northern District of Illinois appointed an official committee of unsecured creditors (the "Committee") [Docket No. 39]. No request for the appointment of a trustee or examiner has been made in this chapter 11 case.

7. Prior to the Petition Date, the Debtor was a bank holding company registered under the Bank Holding Company Act of 1956. The Debtor's wholly-owned federally-chartered banking subsidiary, Corus Bank, N.A. ("Corus Bank"), was primarily focused on commercial real estate lending, deposit gathering, and servicing the check cashing industry. As of June 30, 2009, Corus Bank had total assets of $7 billion and total deposits of approximately $7 billion.

Because Corus Bank's loan portfolio was concentrated in loans secured by condominium projects under construction, Corus Bank was severely impacted by the collapse of the housing market in 2008 and 2009. The continued weakening of the housing and credit markets and of the general economy contributed to increased levels of nonperforming assets, charge offs, and credit loss reserves.

8. As a result of the escalating problems related to Corus Bank's loan portfolio and financial condition, on Friday, September 11, 2009, Corus Bank was closed by the Office of the Comptroller of the Currency ("OCC"), and the FDIC was appointed receiver of Corus Bank. To protect Corus Bank's depositors, the FDIC entered into a purchase and assumption agreement with MB Financial Bank, N.A. to assume all of Corus Bank's deposits. Subsequently, the FDIC agreed to sell the majority of Corus Bank's remaining assets to a consortium managed by Starwood Capital Group.

### The Tax Refunds & Stipulation

9. Historically, the Debtor, along with Corus Bank, filed an annual consolidated tax return with the IRS. The Debtor filed consolidated tax returns that included the tax results of Corus Bank for tax years 2009 and earlier. The consolidated tax return for the 2009 tax year only included Corus Bank's results through the date which the FDIC was appointed as Corus Bank's receiver.

10. The Debtor and the FDIC (each, a "Party" and together, the "Parties") expect that tax refunds will be paid by the IRS and other taxing authorities with respect to taxes paid by or on behalf of the Debtor or Corus Bank (the "Tax Refunds"). These Tax Refunds arise from tax returns filed by the Debtor in those years in which losses were carried back to earlier profitable years. The Debtor's consolidated tax returns for the 2009 tax year, as well as the consolidated tax returns for the 2008 tax year, reported substantial tax losses. As a result of those losses, the

3

2009 and 2008 tax returns included claims for taxes paid in earlier years. Specifically, the Debtor has requested refunds in the amount of $109.4 million for 2008 and $147.8 million for 2009. The Debtor believes that the IRS is holding the Tax Refunds because it is uncertain whether such refunds should be paid to the Debtor or to the FDIC.

11. The FDIC contends that all or substantially all of the Tax Refunds belong to Corus Bank and thus are property of the FDIC as its receiver. The Debtor contends that all of the Tax Refunds belong to the Debtor and thus are property of the Debtor's bankruptcy estate. No determination has yet been made by any court as to whether the Tax Refunds, in whole or in part, are property of the FDIC or the Debtor's estate.[2]

12. In anticipation of the receipt of Tax Refunds, and in order to avoid unnecessary disputes, the Parties believe that it is in their best interest to agree to a protocol for the deposit and retention of the Tax Refunds in a separate, segregated account (the "Tax Refund Holding Account"), without prejudice to either party's position, in the manner described in the Stipulation.

13. Additionally, the FDIC has expressed its desire to file its own version of a tax return or returns on behalf of Corus Bank for the 2009 tax year. Any such returns are required to be filed with the IRS in September, 2010. The Stipulation memorializes the Debtor's consent to permit the FDIC to file the tax return without requiring the FDIC to file a motion to lift the automatic stay.

---

[2] On June 28, 2010, the Debtor filed an adversary proceeding with the Bankruptcy Court, Corus Bankshares, Inc. v. Federal Deposit Insurance Corporation, case number 10-01362, seeking a declaratory judgment as to the Debtor's ownership interest in certain tax refunds owed to the Debtor by the Internal Revenue Service for the years dated 2008 and 2009. [Docket No. 1]. The FDIC filed a motion to dismiss on August 16, 2010 [Docket Nos. 7, 8]. The Bankruptcy Court established a briefing schedule for this motion and has scheduled a hearing on the matter for October 22, 2010.

4

14.     Accordingly, the Debtor and the FDIC have entered into the Stipulation, the material terms of which are as follows:[3]

    a.    The Debtor shall establish an interest-bearing account at Deutsche Bank which shall be and remain separate from any other accounts established by the Debtor (the "Escrow Account").

    b.    Any Tax Refunds received from the IRS by either Party will be deposited promptly into the Escrow Account upon receipt and shall be subject to the Stipulation.

    c.    No funds shall be disbursed or released by Deutsche Bank from the Escrow Account except upon (i) an agreement between the Debtor and the FDIC to release such funds, or (ii) a final order or judgment of the Bankruptcy Court or other court of competent jurisdiction authorizing the release of such funds.

    d.    No presumption or adverse inference shall arise that the Tax Refunds, in whole or in part, belong to and are the property of the FDIC as Receiver or the bankruptcy estate of the Debtor merely because of the Stipulation or the involvement of the Debtor in holding, negotiating or depositing the funds.

    e.    The FDIC shall be permitted to file a 2009 tax return, or returns, on behalf of Corus Bank without seeking leave from the Bankruptcy Court to lift the automatic stay.

15.     The Debtor and the FDIC believe that it is in the best interests of all parties in interest to collect the Tax Refunds and place such funds in the Escrow Account, without prejudice to either Party's position. As set forth above and in the Stipulation, neither the Debtor nor the FDIC intend to waive any of their respective rights and, as such, each Party understands that neither is admitting or recognizing that all or any part of the Tax Refunds are property of the other Party merely by entering into the Stipulation or filing this Motion.

---

[3] To the extent that there are any discrepancies between this summary of the terms of the Stipulation, and the actual terms of the Stipulation, the latter is controlling.

K&E 17246734

**Basis for Relief**

**I.     Establishing the Escrow Account**

16.     Section 363(b)(1) of the Bankruptcy Code provides that the debtor in possession "may use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.  11 U.S.C. § 363.  Bankruptcy Courts have held that if a debtor's proposed use of the property under Section 363(b) represents a reasonable business judgment on the part of the debtor, such use can and should be approved.  See e.g., Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 5145 (7th Cir. 1983); Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel), 722 F.2d 1063, 1070 (2d Cir. 1983); Comm. of Asbestos-Related Litigants v. Johns Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct."). The Debtor believes that the Stipulation is a reasonable use of its interest in the Tax Refunds.  By virtue of the Stipulation, the Tax Refunds will be collected in a timely manner without prejudice to any rights of the Debtor or the FDIC, and will provide the Debtor and the FDIC an opportunity to engage in an appropriate process to resolve their competing claims, while interest accrues on those sums.  Accordingly, approval of this use of the Debtor's interest in the Tax Refunds is a reasonable exercise of the Debtor's business judgment and should be approved.

17.     Section 541(a) of the Bankruptcy Code provides that the bankruptcy estate "is comprised of all of the following property, wherever located and by whomever held: (1)…all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541.  If the Debtor is ultimately determined to be the owner of some or all of the Tax Refunds, approval of the Stipulation will enable the prompt turnover of those amounts to the

6

Debtor's estate. Approval of the Stipulation is appropriate to carry out Bankruptcy Code Section 541, to ensure that the Debtor's interests in the Tax Refunds are preserved pending resolution of the Debtor's and the FDIC's disputes concerning ownership.

18. The Court may exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A court's section 105(a) equitable powers may be used to authorize a debtor to establish escrow accounts where necessary to effectuate an objective of the Bankruptcy Code, such as protecting estate assets for the benefit of creditors. See In re Commercial Mortg. and Fin., Co., 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009). See also In re Andreas, 373 B.R. 864, 873 (Bankr. N.D. Ill. 2007) ("section 105 grants broad powers to bankruptcy courts to implement the provisions of Title 11 and to prevent abuse of the bankruptcy process"). Preservation of the Tax Refunds is vital to ensure that any recovery from the Tax Refunds will be preserved for the benefit of the estate. Accordingly, because the Debtor believes that the Stipulation will facilitate resolution of any dispute over the Tax Refunds and will limit the costs related thereto, it is consistent with the Court's equitable power under § 105(a) and is necessary and appropriate to approve the Stipulation proposed by this Motion.

19. The Debtor submits that the establishment of the Escrow Account will maintain the status quo and provide the Parties time to attempt to consensually resolve their disputes regarding the Tax Refunds, or for a judicial determination. By providing the Parties time to attempt to resolve their disputes, the Debtor can minimize costs to the estate, thereby preserving funds for ultimate distribution to creditors.

K&E 17246734

**II.     Authorizing the FDIC to File a 2009 Tax Return on Behalf of Corus Bank**

20.     Section 362(a) of the Bankruptcy Code imposes an automatic stay upon the commencement of a bankruptcy case upon all entities.  11 U.S.C. § 362.  Still, "on request of a party in interest, the court shall grant relief from the stay" for cause, or based on the other grounds enumerated in section 362(d).  11 U.S.C. § 362(d).  A debtor's consent can be the basis for a bankruptcy court's granting a creditor relief from the automatic stay.  See  In re Brook Valley IV, 347 B.R. 662 (8th Cir. B.A.P. 2006) (noting that debtors might have valid business reasons not to contest a creditor's lift-stay motion and that failing to fight it does not violate the debtor's fiduciary duties); In re Sabratek Corp., 257 B.R. 732 (Bankr. D. Del. 2000) ("the Debtors could consent to relief from the automatic stay to permit [a third party] to join the Debtors as third-party defendants" under section 362(d)).  In consideration of the circumstances of the Debtor's case, in an attempt to streamline the case, and to eliminate needless disputes, the Debtor consents to the FDIC's filing of a 2009 tax return or returns for Corus Bank without requiring the FDIC to file a motion to seek relief from the stay.  As described in the Stipulation, the Debtor does not acquiesce in the filing of the 2009 tax return, and does not agree with any of the content or positions taken in or with respect to any such tax returns.  The Debtor shall have no liability solely by virtue of the FDIC's filing of the 2009 tax return.  The Debtor retains and reserves any and all rights in connection to any 2009 tax return or returns filed by the FDIC.

**Notice**

21.     The Debtor has provided notice of this Motion to:  (a) the Office of the U.S. Trustee for the Northern District of Illinois; (b) the Counsel to the Committee; (c) counsel to the indenture trustee for each of the Debtor's subordinated debentures; (d) any persons who has filed a requested for notice in this chapter 11 case pursuant to the Order Establishing Certain Notice, Case Management, and Administrative Procedures [Docket No. 20] and Bankruptcy Rule 2002;

and (e) the FDIC. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

## No Prior Request

22. No prior request for the relief sought in this Motion has been made to this or any other court.

K&E 17246734

WHEREFORE, the Debtor respectfully requests that the Court enter the order, substantially in the form attached hereto as <u>Exhibit A</u>, approving the Stipulation, substantially in the form of <u>Attachment 1</u> of <u>Exhibit A</u>, and (b) granting such other and further relief as the Court deems appropriate.

Dated:  September 9, 2010         **KIRKLAND & ELLIS LLP**

*/s/ Jeffrey W. Gettleman*
_____
James H.M. Sprayregen, P.C. (IL Bar No. 6190206)
David R. Seligman, P.C. (IL Bar No. 6238064)
Jeffrey W. Gettleman (IL Bar No. 0944904)
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile:  (312) 862-2200

*Counsel to the Debtor and Debtor in Possession*

K&E 17246734