## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CORUS BANKSHARES, INC.[1] | ) | Case No. 10-26881 (PSH) |
| | ) | |
| Reorganized Debtor. | ) | Hearing Date: January 12, 2012 at 10:30 a.m. (CT) |
| | ) | Objection Deadline: January 3, 2012 at 4:00 p.m. (CT) |

## COVER SHEET FOR THE FIFTH INTERIM AND FINAL FEE APPLICATION OF KINETIC ADVISORS, LLC FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE FINAL FEE PERIOD FROM JUNE 15, 2010 THROUGH OCTOBER 26, 2011

Name of Applicant: Kinetic Advisors, LLC

Authorized to Provide
Professional Services to: Corus Bankshares, Inc.
Debtor and Debtor in Possession

Date of Retention: Order retaining Kinetic Advisors, LLC, *nunc pro tunc* to the Petition Date entered on July 9, 2010 [Docket No. 65]

Period for which compensation
and reimbursement is sought: June 15, 2010 through October 26, 2011

Net amount of compensation sought
as actual, reasonable, and necessary: $757,842.50
($199,180.00 for the Fifth Interim Fee Period)

Amount of expense reimbursement sought
as actual, reasonable, and necessary: $16,843.09
($4,351.32 for the Fifth Interim Fee Period)

This is a ____ monthly _X__ interim _X__ final fee application.

---

[1] The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is: Corus Bankshares, Inc. (3592). The location of the Reorganized Debtor's corporate headquarters and the service address for the Reorganized Debtor is: 32 Broadway, Suite 1104, New York, NY 10004.

Below is a summary of previously filed applications:

| Date Filed | Docket Number | Period Covered | Total Fees and Expenses Requested | Total Fees and Expenses Allowed | Total Fees and Expenses Paid |
|---|---|---|---|---|---|
| 8/4/2010 [2] | 99 1st Monthly | 6/15/10-6/30/10 | $23,948.40 | $23,948.40 | $23,948.40 |
| 8/27/2010 [3] | 130 2nd Monthly | 7/1/10-7/31/10 | $52,452.69 | $52,323.81 | $52,323.81 |
| 9/29/2010 [4] | 179 3rd Monthly | 8/1/10-8/31/10 | $75,476.90 | $75,296.90 | $75,296.90 |
| 10/29/2010 [5] | 206 4th Monthly | 9/1/10-9/30/10 | $24,680.00 | $24,680.00 | $24,680.00 |
| 11/8/2010 [6] | 222 1st Interim | 6/15/10-9/30/10 | $176,557.99 | $176,249.11 | $176,249.11 |
| 11/16/2010 [7] | 228 5th Monthly | 10/1/10-10/31/10 | $14,015.00 | $11,212.00 | $11,212.00 |
| 12/20/2010 [8] | 307 6th Monthly | 11/1/10-11/30/10 | $35,731.05 | $28,593.05 | $28,593.05 |
| 3/9/2011 [9] | 369 7th Monthly | 12/1/10-1/31/11 | $34,885.00 | $27,908.00 | $27,908.00 |
| 4/6/2011 [10] | 408 2nd Interim | 10/1/10-1/31/11 | $84,631.05 | $84,481.05 | $84,481.05 |
| 4/7/2011 [11] | 409 8th Monthly | 2/1/11-2/28/11 | $23,529.99 | $18,826.99 | $18,826.99 |
| 5/24/2011 [12] | 461 9th Monthly | 3/1/11-4/30/11 | $48,856.49 | $39,513.49 | $39,513.49 |
| 6/28/2011 [13] | 509 3rd Interim | 2/1/11-4/30/11 | $72,386.48 | $72,176.48 | $72,176.48 |
| 7/19/2011 [14] | 532 10th Monthly | 5/1/11-5/31/11 | $86,090.76 | $86,090.76 | $69,828.76 |
| 8/4/2011 [15] | 586 11th Monthly | 6/1/11-6/30/11 | $59,823.70 | $59,823.70 | $47,895.70 |
| 8/29/2011 [16] | 646 12th Monthly | 7/1/11-7/31/11 | $91,664.29 | $91,664.29 | $73,796.79 |
| 10/5/2011 [17] | 695 4th Interim | 5/1/11-7/31/11 | $237,578.75 | $235,407.60 | $235,407.60 |
| 10/10/2011 [18] | 696 13th Monthly | 8/1/11-8/31/11 | $40,124.22 | $40,124.22 | $32,367.22 |
| 10/25/2011 [19] | 719 14th Monthly | 9/1/11-9/30/11 | $55,763.63 | $55,763.63 | |
| 12/12/2011 | 791 15th Monthly | 10/1/11-10/26/11 | $107,643.47 | | |

[2] On August 27, 2010, Kinetic filed the *Certification of No Objection Regarding the First Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period June 15, 2010 Through June 30, 2010* [Docket No. 99].

[3] On September 14, 2010, Kinetic filed the *Certification of No Objection Regarding the Second Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period July 1, 2010 Through July 31, 2010* [Docket No. 130].

[4] On October 22, 2010, Kinetic filed the *Certification of No Objection Regarding the Third Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period August 1, 2010 Through August 31, 2010* [Docket No. 179].

[5] On November 15, 2010, Kinetic filed the *Certification of No Objection Regarding the Fourth Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period September 1, 2010 Through September 30, 2010* [Docket No. 206].

[6] The fees and expenses requested in the June 15, 2010 through September 30, 2010 Applications were $176,557.99. The Court disallowed $308.88 in fees and expenses, and approved the remaining fees and expenses requested on an interim basis pursuant to the order entered by this Court on December 17, 2010 [Docket No. 294].

[7] On December 6, 2010, Kinetic filed the *Certification of No Objection Regarding the Fifth Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period October 1, 2010 Through October 31, 2010* [Docket No. 228].

[8] On January 10, 2011, Kinetic filed the *Certification of No Objection Regarding the Sixth Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period November 1, 2010 Through November 30, 2011* [Docket No. 307].

[9] On March 24, 2011, Kinetic filed the *Certification of No Objection Regarding the Seventh Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period December 1, 2010 Through January 31, 2011* [Docket No. 369].

[10] The fees and expenses requested in the October 1, 2010 through January 31, 2011 Applications were $84,631.05. The Court disallowed $150.00 in fees and approved the remaining fees and expenses requested on an interim basis pursuant to the order entered by this Court on April 21, 2011 [Docket No. 435].

[11] On April 27, 2011, Kinetic filed the *Certification of No Objection Regarding the Eighth Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period February 1, 2011 Through February 28, 2011* [Docket No. 409].

[12] On June 8, 2011, Kinetic filed the *Certification of No Objection Regarding the Ninth Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period March 1, 2011 Through April 30, 2011* [Docket No. 461].

[13] The fees and expenses requested in the February 1, 2011 through April 30, 2011 Applications were $72,386.48. The Court disallowed $210.00 in fees and approved the remaining fees and expenses requested on an interim basis pursuant to the order entered by this Court on June 28, 2011 [Docket No. 509].

[14] On August 3, 2011, Kinetic filed the *Certification of No Objection Regarding the Tenth Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period May 1, 2011 Through May 31, 2011* [Docket No. 532].

[15] On August 19, 2011, Kinetic filed the *Certification of No Objection Regarding the Eleventh Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period June 1, 2011 Through June 30, 2011* [Docket No. 586].

[16] On September 23, 2011, Kinetic filed the *Certification of No Objection Regarding the Twelfth Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period July 1, 2011 Through July 31, 2011* [Docket No. 646].

[17] The fees and expenses requested in the May 1, 2011 through July 31, 2011 Applications were $237,578.75. The Court disallowed $2,171.15 in fees and expenses, and approved the remaining fees and expenses requested on an interim basis pursuant to the order entered by this Court on November 1, 2011 [Docket No. 725].

[18] On October 25, 2011, Kinetic filed the *Certification of No Objection Regarding the Thirteenth Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period August 1, 2011 Through August 31, 2011* [Docket No. 696].

[19] On December 16, 2011, Kinetic filed the *Certification of No Objection Regarding the Fourteenth Application of Kinetic Advisors, LLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period September 1, 2011 Through September 30, 2011* [Docket No. 719].

Dated:  December 20, 2011                    KINETIC ADVISORS, LLC

                                             _____
                                             Sudhin Roy, Senior Managing Director
                                             805 Third Avenue, Floor 14
                                             New York, NY  10022
                                             (917) 338-1260

                                             *Financial Advisor to the Reorganized Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CORUS BANKSHARES, INC. | ) | Case No. 10-26881 (PSH) |
| | ) | |
| Reorganized Debtor. | ) | <u>Hearing Date:</u> January 12, 2012 at 10:30 a.m. (CT) |
| | ) | <u>Objection Deadline:</u> January 3, 2012 at 4:00 p.m. (CT) |

**FIFTH INTERIM AND FINAL FEE APPLICATION OF KINETIC ADVISORS, LLC
FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES FOR THE FINAL FEE PERIOD
FROM JUNE 15, 2010 THROUGH OCTOBER 26, 2011**

Pursuant to 11 U.S.C. §§ 327(a) and 328; Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); the Retention Order (defined below); the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members* (the "Interim Compensation Order") [Docket No. 67]; the local bankruptcy rules for the United States Bankruptcy Court for the Northern District of Illinois (the "Local Bankruptcy Rules"); and *the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330* (the "U.S. Trustee Guidelines"), Kinetic Advisors, LLC ("Kinetic" or "Applicant"), financial advisor for the above captioned debtor and debtor in possession (the "Debtor"), hereby submits its: (a) fifth interim fee application for approval of monthly fee applications for compensation for services rendered in the amount of $199,180.00 and reimbursement of actual and necessary expenses in the amount of $4,351.32 that Kinetic incurred for the period of August 1, 2011 through October 26, 2011 (attached hereto as **Exhibit A**, the "Fifth Interim Fee Application"); and the final fee application (the "Final Fee Application")[20] for (i) final allowance of compensation for services

rendered in the amount of $757,842.50 and reimbursement of actual and necessary expenses in the amount of $16,843.09 for the period from June 15, 2010 through October 26, 2011 (the "Final Fee Period"); and (ii) payment of the unpaid portion of such allowed fees and expenses.  In support of this Final Fee Application, Kinetic respectfully states as follows.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are 327, 328 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rule 2016, and Local Bankruptcy Rule 5082-1.

## BACKGROUND

4.      Prior to its chapter 11 bankruptcy the Debtor was the holding company of Corus Bank, N.A., a regional Midwestern bank engaged in commercial real estate lending, deposit gathering, and servicing the check cashing industry.

5.      On June 15, 2010 (the "Petition Date"), the Debtor filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.  During the chapter 11 case, the Debtor operated its business and managed its property pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner was made in this chapter 11 case.

---

[20] Pursuant to section (b)(1)(v) of the U.S. Trustee Guidelines, the Reorganized Debtor has had an opportunity to review and approve the request for compensation and reimbursement for the actual and necessary expenses sought herein.

6.      On June 29, 2010, the United States Trustee for the Northern District of Illinois (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 39].

7.      Commencing on the Petition Date, the Debtor worked actively with the Committee and its advisors on possible restructuring scenarios in an expansive effort to maximize value for all parties in interest. After extensive discussions with the Committee, which favored liquidation, the Debtor filed the *Debtor's Amended Plan Under Chapter 11 of the Bankruptcy Code* [Docket No. 285] on December 15, 2010, which proposed the orderly wind-down and liquidation of the Debtor. On December 16, 2010, the Bankruptcy Court approved the disclosure statement for this proposed liquidation plan [Docket No. 303], and on December 23, 2010, the Debtor commenced solicitation [Docket No. 322]. Subsequently, six creditors (the holders of a substantial portion of the Debtor's trust originated preferred shares (the "TOPrS")) voted to reject the Debtor's proposed liquidation plan, while only a single creditor in that class voted to accept the liquidation plan, which caused the liquidation plan to be rejected..

8.      In the wake of this rejection, extensive discussions ensued among the Debtor, the Committee, and Tricadia (a TOPrS holder) about the propriety of a plan of liquidation. These discussions included meetings among the Debtor, Tricadia, and the Committee, and focused on an extensive analysis of the costs and benefits of a plan of liquidation versus a plan of reorganization. Tricadia and a majority of the other creditors who had voted to reject the liquidation plan, plus one additional creditor, determined that a plan of reorganization would best maximize value for the Debtor's estate.

9.      The Debtor, Tricadia, and certain other creditors thereafter negotiated the terms of a reorganization plan that each believed would maximize recoveries for the Debtor's estates, and each

entered into an agreement to support a plan proposed by the Debtor that was consistent with the agreed-upon terms. Indeed, on May 25, 2011, the Debtor filed plan support letters signed by each of these creditors containing term sheets that outlined the material terms of a plan such creditors would support [Docket No. 464]. In addition, also on May 25, 2011, the Debtor filed a plan of reorganization [Docket No. 463] (the "Plan"), which reflected the material terms agreed to by such creditors.

10.    The Debtor then negotiated with the remainder of the creditors that had actually voted on, and explicitly rejected, the liquidation plan, to garner their support. In addition, the Debtor worked extensively with the Committee to resolve various issues raised by the Committee regarding the Plan. All such issues were resolved, and the Committee ultimately supported the Plan.

11.    The consensual chapter 11 Plan provided for a reorganization of the Debtor, whereby the Reorganized Debtor eliminated its existing unsecured debt obligations and converted approximately $362 million of TOPrS into equity in the reorganized company. The Plan also provided that the Reorganized Debtor would pay cash to holders of another approximately $57 million in unsecured claims. In order to effectuate distributions under the Plan, the Plan provides that all of the assets of the Debtor's estate would vest in the Reorganized Debtor. The Reorganized Debtor will continue to operate the Debtor's business as a going concern, and will pursue ongoing litigation with the Federal Deposit Insurance Corporation (the "FDIC"), and make distributions under the Plan. The Debtor's rights to pursue certain causes of action against former officers and directors who were not released in the Plan vested in a Litigation Trust.

12.     On September 27, 2011, the Court entered the Order Confirming the Debtor's Third

Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Docket No. 689] (the

"Confirmation Order"). On October 27, 2011 (the "Effective Date"), the Plan became effective.

13.     On the Effective Date, there were no more than approximately thirty (30) holders of

equity interests. The Reorganized Debtor has emerged as a privately held company, with a new

board of directors, who remain responsible for implementing the Plan and operating the business of

the Reorganized Debtor.

14.     The outcome of this case is truly remarkable in light of the global economic

downturn and its impact on the U.S. financial sector, and represents one of the few successful bank

holding company reorganizations following the credit crisis of 2008 and 2009. Following

emergence from Chapter 11, the Reorganized Debtor will continue in real estate-related businesses

(its business prior to entering bankruptcy), and will be primarily engaged in purchasing or acquiring

interests in real estate and mortgages, with possible secondary activities in related financial services.

### RETENTION OF AND CONTINUING DISINTERESTEDNESS OF KINETIC ADVISORS, LLC

15.     By this Court's order dated July 9, 2010, the Debtor was authorized to retain Kinetic

as its financial advisor effective as of the Petition Date [Docket No. 65] (the "Retention Order").

The Retention Order authorizes the Debtor to compensate Kinetic in accordance with the

procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the

Local Bankruptcy Rules, the U.S. Trustee Guidelines and any applicable orders of this Court.

16.     As disclosed in the *Declaration of Sudhin Roy in Support of the Application for

Entry of an Order Authorizing the Employment and Retention of Kinetic Advisors, LLC as Financial

Advisor to Corus Bankshares, Inc., Nunc Pro Tunc to the Petition Date* [Docket No. 25, Exhibit B]

(the "Initial Declaration"), filed on June 17, 2010, Kinetic does not hold or represent any interest

adverse to the Debtor's estate and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

17.     Kinetic may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtor and Reorganized Debtor in this chapter 11 case.   In the Initial Declaration, Kinetic disclosed its connections to parties in interest that it had been able to ascertain using its reasonable efforts.

18.     Kinetic performed the services for which it is seeking compensation on behalf of or for the Debtor and its estate and not on behalf of any committee, creditor, or other person.

19.     Except as provided herein, in this Final Fee Application, or in this Fifth Interim Fee Application, Kinetic has received no payment and no promises for payment from any source other than the Debtor for services rendered or to be rendered in any capacity whatsoever in connection with this chapter 11 case.

20.     Pursuant to Bankruptcy Rule 2016(b), Kinetic has not shared, nor has Kinetic agreed to share in connection with this chapter 11 case (a) any compensation it received or may receive with another person other than with the professionals of Kinetic or (b) any compensation another person or party has received or may receive.

### KINETIC ADVISORS, LLC MONTHLY FEE APPLICATIONS

21.     Pursuant to the procedures set forth in the Retention Order and the Interim Compensation Order, professionals could apply for monthly compensation and reimbursement (each such application, a "Monthly Fee Application").   If no notice party objected to a professional's Monthly Fee Application within 14 days after the date of service of such Monthly Fee Application, the applicable professional could submit to the Court a certification of no

objection, whereupon the Debtor were authorized to pay the applicable professional interim compensation of 80% of the fees requested and reimbursement of 100% of the expenses requested.

22.     Furthermore, and also pursuant to the Interim Compensation Order, professionals were to file and serve with the Court an interim request (each, an "Interim Fee Application") for interim Court approval and allowance of the Monthly Fee Applications filed during the period covered by the Interim Fee Application. If the Court granted the relief requested in the Interim Fee Application, the Debtor were authorized and directed to pay the applicable professional 100% of the fees and expenses requested in the Monthly Fee Applications covered by that Interim Fee Application, less any amounts previously paid in connection with the Monthly Fee Applications. Any payment made pursuant to a Monthly Fee Application or an Interim Fee Application is subject to final approval following a hearing on the professional's final fee application.

23.     Prior to the filing of this Final Fee Application, Kinetic filed Monthly Fee Applications for each of the months included in the Final Fee Period. The chart attached hereto as **Exhibit B** summarizes the current status of these Monthly Fee Applications.[21]   Subject to the representations made herein, all fees and expenses sought in each of the Monthly Fee Applications are included as part of this Final Fee Application.

---

[21] The Monthly Fee Applications, as listed in **Exhibit B** attached hereto and incorporated herein by reference, are available (a) on the docket of the United States Bankruptcy Court for the Northern District of Illinois under Case No. 10-26881 (PSH) or (b) upon request from Kinetic by contacting the undersigned financial advisor.

## KINETIC ADVISORS, LLC TOTAL PAYMENT RECEIVED

24.     As of the date hereof, Kinetic has received $424,432.35 from the Debtor for fees and expenses incurred during the Final Fee Period.  Subject to the representations made herein, all fees and expenses requested in the Fifth Interim Fee Application are included as part of this Final Fee Application.  The fees and expenses requested in the Fifth Interim Fee Application are $199,180.00 and $4,351.32, respectively, and the fees and expenses requested in the Final Fee Application are $757,842.50 and $16,843.09, respectively.

## REASONABLE AND NECESSARY SERVICES RENDERED

25.     The professional services that Kinetic rendered during the Final Fee Period are grouped into the numbered and titled activities described below and summarized by professional in **Exhibit C** and by activity in **Exhibit D**.

26.     01 - Equity/Asset Sale:  Kinetic performed work related to the sale of the Debtor's assets including:  identifying potential purchasers; introducing the Debtor to potential purchasers; assisting the Debtor in discussions with potential purchasers; and analyzing the conditions under which potential purchasers would likely proceed to a transaction.  Kinetic incurred a total of 37.3 hours for a total fee of $21,105.00 for this billing category.

27.     02 - Business Analysis:  Kinetic performed work related to analyzing the Debtor's operations and assets including: preparing support data required for various filings in the chapter 11 case; preparing due diligence data requested by potential purchasers; assisting with the preparation of cash flow forecasts; analyzing the operation and financial issues between the Debtor and operator; analyzing various operating agreements; preparing data in response to information requests from the Committee's representatives; analyzing on-going costs and "burn rate"; creating financial analyses to outline possible outcomes under different scenarios; identifying possible legal

12

structures the Debtor could assume upon its emergence; evaluating implications and feasibility of each of these structures; examining the implications of various tax issues raised by parties in interest; and reviewing the court ruling of *Nebank* for similarities to the Debtor's chapter 11 case. Kinetic incurred a total of 192.7 hours for a total fee of $96,255.00 for this billing category.

28.     03 - Business Operations:  Kinetic performed work related to management of cash in connection with pre and post-petition payables and receivables; assisted the Debtor to comply with First Day Orders; and attended the Debtor's Board meetings.  Kinetic incurred a total of 16.7 hours for a total fee of $11,475.00 for this billing category.

29.     04 - Case Administration and 05 - Fee/Employment Applications:  Kinetic performed work related to the preparation of its monthly and interim fee applications.  Kinetic incurred a total of 58.9 hours for a total fee of $16,450.00 for this billing category.

30.     07 - Plan and Disclosure Statement:  Kinetic performed activities including: reviewing the proposed Plan structure; reviewing assumptions and developing detailed computer models for a reorganization scenario and a liquidation scenario; reviewing the disclosure statement and providing necessary analysis; researching and responding to due diligence questions by purchaser of TOPrS debt; preparing financial analyses and models to determine Plan recoveries, business valuation, projected financial statements and other miscellaneous analyses related to the Plan; creating a best interest test model; preparing documents for and attending meetings with potential Plan sponsors; preparing a presentation for and attending a meeting with PBGC; assisting the Debtor to search for possible Board and CEO candidates for the reorganized company; exploring alternatives for post-confirmation management compensation structures; researching and creating market-based comparables for management compensation to facilitate discussion and negotiation for post-emergence management agreement; analyzing data and developing a

presentation for the FDIC in response to the FDIC's objection the Plan; preparing for and attending the Debtor's confirmation hearing; assisting the Debtor with post-confirmation workplans and planning; and developing presentations for the Debtor's Board. Kinetic incurred a total of 1120.3 hours for a total fee of $575,547.50 for this billing category.

31.   09 - Travel: Kinetic charges its clients the normal billing rate for its professionals for one-half of the travel time incurred. Travel time is computed from the time the individual leaves the location from which he or she departs until arrival at the designated work location. Kinetic incurred a total of 124.8 travel hours, of which 50% (62.4 hours) was charged at the standard hourly rates, resulting in fees of $29,080.00 for this billing category.

32.   11 – Meeting with Creditors: Kinetic participated in various telephone conferences with the Committee's advisors and counsel and attended meetings with the Committee. Kinetic incurred a total of 13.3 hours for a total fee of $7,930.00 for this billing category.

### ACTUAL AND NECESSARY EXPENSES

33.   It is Kinetic's policy to charge its clients for identifiable, non-overhead expenses incurred in connection with the client's engagement that would not have been incurred except for representation of that particular client. It is also Kinetic's policy to charge its clients only the amount actually incurred by Kinetic in connection with such items. Examples of such expenses are airfare, transportation, meals, lodging, printing and audio conferencing.

34.   A summary of expenses by type, as well as a detailed itemization and description of the disbursements made by Kinetic on the Debtor's behalf during the Final Fee Period is included in each Monthly Fee Application (incorporated herein by reference). The disbursements for the Final Fee Period total $16,843.09, as summarized in **Exhibit E**.

## REQUESTED COMPENSATION AND REIMBURSEMENT OF KINETIC ADVISORS, LLC SHOULD BE ALLOWED

35.    Section 331 of the Bankruptcy Code provides for compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. *See* 11 U.S.C. § 331. Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330(a)(3) also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including:
>
> (a)    the time spent on such services;
>
> (b)    the rates charged for such services;
>
> (c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (e)    with respect to a professional person, whether the person possessed and had demonstrated the necessary skills and experience; and

(f)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

36.   Final award of the fees and expenses requested herein is supported by the results achieved for the Debtor, their creditors and other stakeholders, given the Debtor's circumstances and uncertain prospects as of the Petition Date.  As an initial matter, the complexities of this chapter 11 case required substantial outlays of time and effort by Kinetic professionals performing an array of services in connection with their representation of the Debtor as debtor in possession in this chapter 11 case.  As noted above, Kinetic's expertise and leadership as financial advisors facilitated the Debtor's smooth and seamless transition into chapter 11.  Kinetic's professionals evaluated and pursued various operational and restructuring initiatives.  As a result of these initial efforts, the Debtor was able to minimize the negative impacts resulting from the commencement of this chapter 11 case.

37.   Additionally, with the assistance of Kinetic, the Debtor successfully navigated through various obstacles presented in this chapter 11 case including:  (a) drafting and negotiating an initial plan of liquidation and related disclosure statement; (b) formulating a revised business plan; (c) planning and executing the emergence of the reorganized Debtor as a going-concern; (d) negotiating settlements with major creditor constituencies, including PBGC and the FDIC; (e) conducting extensive diligence to locate and communicate with holders of the Debtor's TOPrS debt; (f) pursuing Tax Refund Litigation with the FDIC in order to maximize the value of the Debtor's estate; and (g) formulating and negotiating a consensual Plan of reorganization with major creditor constituencies, drafting the accompanying disclosure statement, and obtaining timely confirmation and consummation of the Plan.

38.    A close look at the services performed by Kinetic during the course of this chapter 11 case makes clear that Kinetic used its restructuring expertise in an efficient and effective manner to achieve exemplary results for the Debtor under the circumstances. Kinetic respectfully submits that the services for which it seeks compensation in the Final Fee Application and Fifth Interim Fee Application were, at the time rendered, necessary for and beneficial to the Debtor and its estate and were rendered in order to protect and preserve the value of the Debtor's estate. Kinetic further believes that the services rendered to the Debtor were performed economically, effectively, and efficiently and benefited the Debtor and its estate and creditors.

39.    The hourly rates and corresponding rate structure utilized by Kinetic in this chapter 11 case are equivalent to the hourly rates and corresponding rate structure predominantly used by Kinetic for financial advisory services, regardless of whether a fee application is required. These rates and the rate structure reflect that such particular matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in this chapter 11 case.

40.    Moreover, Kinetic's hourly rates are set at a level designed to compensate Kinetic fairly for the work of its professionals and to cover certain fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged by other financial advisory firms.

41.    In addition, Kinetic worked efficiently. Kinetic carefully assigned the work to appropriate professionals according to the experience and level of expertise required for each particular task.

17

42.    Kinetic respectfully submits that the professional services rendered by Kinetic on behalf of the Debtor's estate during this chapter 11 case were necessary and appropriate given the complexity of this chapter 11 case, the time expended by Kinetic, the nature and extent of Kinetic's services rendered, the value of Kinetic's services, and the costs of comparable services outside of bankruptcy, which are the relevant factors set forth in section 330 of the Bankruptcy Code. Kinetic, therefore, respectfully submits that the requested compensation and reimbursement should be allowed.

## <u>REPRESENTATIONS</u>

43.    Although every effort has been made to include all fees and expenses incurred in the Final Fee Period, some fees and expenses might not be included in this Final Fee Application due to delays caused by accounting and processing during the Final Fee Period. Kinetic seeks approval of any such fees and expenses not included herein.

44.    In summary, by this Final Fee Application, Kinetic requests final allowance of compensation for fees and expenses in the total amount of $774,685.59 consisting of (a) $757,842.50 for reasonable and necessary professional services rendered by Kinetic, and (b) $16,843.09 for actual and necessary costs and expenses.

WHEREFORE, Kinetic requests that it be allowed reimbursement for its fees and expenses incurred during the Final Fee Period and that such fees and expenses be paid as administrative expenses of the estates.

Dated:  December 20, 2011

KINETIC ADVISORS, LLC

_____

Sudhin Roy, Senior Managing Director
805 Third Avenue, Floor 14
New York, NY  10022
(917) 338-1260

*Financial Advisor to the Reorganized Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CORUS BANKSHARES, INC. | ) | Case No. 10-26881 (PSH) |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

STATE OF NEW YORK    )
                              )  ss:
COUNTY OF NEW YORK   )

### <u>DECLARATION</u>

Sudhin Roy declares, pursuant to section 1746 of title 28 of the United States Code, as follows:

1.      I am a Senior Managing Director with the applicant firm, Kinetic Advisors, LLC.

2.      I have personally performed certain of the professional services rendered by Kinetic Advisors, LLC as financial advisor to the above-captioned debtor and debtor in possession (collectively, the "Debtor") and am familiar with the other work performed on behalf of the Debtor by professionals in the firm.

3.      The facts set forth in the foregoing application are true and correct to the best of my

knowledge, information and belief.

_____

Sudhin Roy, Senior Managing Director


SUBSCRIBED AND SWORN TO before me this 20th day of December, 2011.


_____
Notary Public
My Commission Expires: 11/10/12

NICOLE M CANALES
NOTARY PUBLIC STATE OF NEW YORK
BRONX COUNTY
LIC. #01CA6196209
COMM. EXP. 11-10-2012