## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CORUS BANKSHARES, INC.[1] | ) Case No. 10-26881 (PSH) |
| | ) |
| Reorganized Debtor. | ) **Hearing Date:  January 12, 2012, 10:00 a.m., C.T.** |
| | ) **Objection Deadline:  January 6, 2012, 4:00 p.m. C.T.** |

### NOTICE OF HEARING ON FIFTH INTERIM AND FINAL FEE APPLICATION OF KIRKLAND & ELLIS LLP FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE FINAL FEE PERIOD JUNE 15, 2010 THROUGH OCTOBER 26, 2011

TO:   THE UNITED STATES TRUSTEE, COUNSEL FOR THE CREDITORS' COMMITTEE, ALL PARTIES LISTED IN THE INTERIM COMPENSATION ORDER AND ALL OTHER PARTIES WHO REQUESTED NOTICE PURSUANT TO RULE 2002 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Pursuant to the *Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (With Technical Modifications)* [Docket No. 674] Kirkland & Ellis LLP ("K&E"), attorneys for the above-captioned reorganized debtor (the "Reorganized Debtor"), hereby applies for final allowance of compensation and reimbursement of expenses (the "Final Fee Application") for the applications filed during the period from June 15, 2010 through and including October 26, 2011.  Summaries of the fees and expenses subject to this Final Fee Application are summarized in the attachment hereto.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider approval of the Final Fee Application will be held before the Honorable Pamela S. Hollis, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 644, Chicago, Illinois 60604, on **January 12, 2012 at 10:00 a.m., C.T.**

---

[1]   The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is:  Corus Bankshares, Inc. (3592).  The location of the Reorganized Debtor's corporate headquarters and the service address for the Reorganized Debtor is:  32 Broadway, Suite 1104, New York, NY 10004.

PLEASE TAKE FURTHER NOTICE that any objection must be filed with the court by

**January 6, 2012 at 4:00 P.M., C.T.** and served by such time on:  (a) counsel to the Debtor;

(b) the Office of the United States Trustee for the Northern District of Illinois, 219 South

Dearborn Street, Suite 873, Chicago, Illinois 60604, Attn.:  M. Gretchen Silver; (c) counsel to

the official committee of unsecured creditors; and (d) those parties who have requested service of

papers in this case pursuant to Bankruptcy Rule 2002 and the case management procedures

approved by the Court in this case.

Dated:  December 23, 2011

**KIRKLAND & ELLIS LLP**
*/s/ Jeffrey W. Gettleman*

James H.M. Sprayregen, P.C. (IL Bar No. 6190206)
David R. Seligman, P.C. (IL Bar No. 6238064)
Jeffrey W. Gettleman (IL Bar No. 0944904)
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile:  (312) 862-2200

*Counsel to the Reorganized Debtor*

K&E 20827297

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CORUS BANKSHARES, INC.[1] | ) | Case No. 10-26881 (PSH) |
|  | ) |  |
| Reorganized Debtor. | ) |  |
|  | ) | Hearing Date:  January 12, 2012 at 10:00 a.m., C.T. |
|  | ) | Objection Deadline:  January 6, 2012, at 4:00 p.m., C.T. |

**COVER SHEET FOR THE FIFTH INTERIM AND FINAL FEE APPLICATION OF KIRKLAND & ELLIS LLP FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE FINAL FEE PERIOD JUNE 15, 2010 THROUGH OCTOBER 26, 2011**

| **Name of Applicant** | **Kirkland & Ellis LLP** |
|---|---|
| Authorized to provide professional services to: | Corus Bankshares, Inc., Debtor and Debtor in Possession |
| Date of retention: | Order retaining Kirkland & Ellis LLP *nunc pro tunc* entered on July 9, 2010 [Docket No. 66] |
| Period for which compensation and reimbursement is sought: | June 15, 2010 through October 26, 2011 |
| Amount of compensation sought as actual, reasonable and necessary: | $5,396,673.10 ($1,145,238.00 for the Fifth Interim Fee Period) |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $190,746.77 ($70,003.66 for the Fifth Interim Fee Period) |

This is a ___ monthly **X** interim **X** final application.

---

[1]   The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is:  Corus Bankshares, Inc. (3592).  The location of the Reorganized Debtor's corporate headquarters and the service address for the Reorganized Debtor is:  32 Broadway, Suite 1104, New York, NY 10004.

Below is a summary of the filed Applications:

| Date Filed | Period Covered | Total Requested (Fees and Expenses) | Total Allowed (Fees and Expenses) | Fee and Expenses Previously Paid |
|---|---|---|---|---|
| August 25, 2010[2] Amended (Docket No. 124) | 6/15/10 - 6/30/10 | $327,389.12 | $262,760.82 | $262,760.82 |
| November 8, 2010[3] Amended (Docket No. 221) | 7/1/10 - 7/31/10 | $408,195.00 | $328,280.40 | $328,280.40 |
| October 21, 2010[4] (Docket No. 197) | 8/1/10 - 8/31/10 | $519,367.30[5] | $418,408.70 | $418,408.70 |
| Second Amended First Interim Fee Request December 1, 2010 (Docket No. 278) | 6/15/10 - 8/31/10 | $1,254,951.42 | $1,250,234.92[6] | $240,785.00 |
| December 3, 2010[7] (Docket No. 255) | 9/1/10 - 9/30/10 | $470,413.19 | $382,397.59 | $382,397.59 |
| January 10, 2011[8] (Docket No. 215) | 10/1/10 - 10/31/10 | $307,660.12[9] | $250,356.22 | $250,356.22 |

---

[2]  On August 27, 2010, K&E filed the *Certification of No Objection Regarding the Amended First Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period June 15, 2010 Through June 30, 2010* [Docket No. 134].

[3]  On November 24, 2010, K&E filed the *Certification of No Objection Regarding the Amended Second Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period July 1, 2010 Through July 31, 2010* [Docket No. 250].

[4]  On November 8, 2010, K&E filed the *Certification of No Objection Regarding the Third Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period August 1, 2010 Through August 31, 2010* [Docket No. 215].

[5]  K&E originally requested 506,931.50 in fees and $14,574.30 in expense reimbursement in its *Third Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period August 1, 2010 Through August 31, 2010*, but reduced its requested fees to $504,793.00 pursuant to an agreement with the Office of the United States Trustee (the "U.S. Trustee").

[6]  The fees and expenses requested in the June 15, 2010 through August 31, 2010 Applications were $1,254,951.42.  The Court disallowed $4,716.50 in fees and approved the remaining fees and expenses requested on an interim basis pursuant to the order entered by this Court on December 16, 2010 [Docket No. 297].

[7]  On December 20, 2010, K&E filed the *Certification of No Objection Regarding the Fourth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period September 1, 2010 Through September 30, 2010* [Docket No. 302].

2

| Date Filed | Period Covered | Total Requested (Fees and Expenses) | Total Allowed (Fees and Expenses) | Fee and Expenses Previously Paid |
|---|---|---|---|---|
| March 10, 2011 (Docket No. 370)[10] | 11/1/10 - 11/30/10 | $282,886.02[11] | $227,583.12 | $227,583.12 |
| March 22, 2011 (Docket No. 382)[12] | 12/1/10 - 12/31/10 | $220,331.71[13] | $176,875.71 | $176,875.71 |
| Second Interim Fee Request April 6, 2011 (Docket No. 406) | 9/1/10 - 12/31/10 | $1,281,291.04 | $1,278,845.04[14] | $241,632.40 |
| April 7, 2011 (Docket No. 410)[15] | 1/1/11 - 1/31/11 | $200,752.42[16] | $161,751.12 | $161,751.12 |

---

8  On January 26, 2011, K&E filed the *Certification of No Objection Regarding the Fifth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period October 1, 2010 Through October 31, 2010* [Docket No. 331].

9  K&E originally requested $294,466.00 in fees and $21,205.77 in expense reimbursement in its *Fifth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period October 1, 2010 through October 31, 2010*, but reduced its requested fees to $286,519.50 and its requested expense reimbursement to $21,140.62 pursuant to an agreement with the U.S. Trustee.

10  On March 25, 2011, K&E filed the *Certification of No Objection Regarding the Sixth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period November 1, 2010 through November 30, 2010* [Docket No. 386].

11  K&E originally requested $278,005.00 in fees in its *Sixth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period November 1, 2010 through November 30, 2010*, but reduced its requested fees to $276,514.50 pursuant to an agreement with the U.S. Trustee.

12  On April 6, 2011, K&E filed the *Certification of No Objection Regarding the Seventh Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period December 1, 2010 Through December 31, 2010* [Docket No. 405].

13  K&E originally requested $217,819.50 in fees in its *Seventh Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period December 1, 2010 Through December 31, 2010*, but reduced its requested fees to $217,280.00 pursuant to an agreement with the U.S. Trustee.

14  The fees and expenses requested in the September 1, 2010 through December 31, 2010 Applications were $1,281,291.04. The Court disallowed $2,265.50 in fees and $180.50 in expenses and approved the remaining fees and expenses requested on an interim basis pursuant to the order entered by this Court on April 21, 2011 [Docket No. 428].

15  On April 27, 2011, K&E filed the *Certification of No Objection Regarding the Eighth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period January 1, 2011 Through January 31, 2011* [Docket No. 431].

3

| Date Filed | Period Covered | Total Requested (Fees and Expenses) | Total Allowed (Fees and Expenses) | Fee and Expenses Previously Paid |
|---|---|---|---|---|
| April 25, 2011 (Docket No. 430)[17] | 2/1/11 - 2/28/11 | $155,260.62[18] | $124,461.52 | $124,461.52 |
| May 4, 2011 (Docket No. 436)[19] | 3/1/11 - 3/31/11 | $215,602.47 | $173,204.57 | $173,204.57 |
| May 27, 2011 (Docket No. 478)[20] | 4/1/11 - 4/30/11 | $182,346.26 | $146,493.76 | $146,493.76 |
| Third Interim Fee Request June 28, 2011 (Docket No. 508) | 1/1/11 - 4/30/11 | $753,961.77 | $752,891.49[21] | $146,980.52 |
| July 8, 2011 (Docket No. 521)[22] | 5/1/11 - 5/31/11 | $320,934.52 | $257,373.92[23] | $257,373.92 |

---

[16] K&E originally requested $199,409.50 in fees in its *Eighth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period January 1, 2011 Through January 31, 2011*, but reduced its requested fees to $195,006.50 pursuant to an agreement with the U.S. Trustee.

[17] On May 9, 2011, K&E filed the *Certification of No Objection Regarding the Ninth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period February 1, 2011 Through February 28, 2011* [Docket No. 438].

[18] K&E originally requested $154,437.50 in fees in its *Ninth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period February 1, 2011 Through February 28, 2011*, but reduced its requested fees to $153,995.50 pursuant to an agreement with the U.S. Trustee.

[19] On May 18, 2011, K&E filed the *Certification of No Objection Regarding the Tenth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period March 1, 2011 Through March 31, 2011* [Docket No. 456].

[20] On June 10, 2011, K&E filed the *Certification of No Objection Regarding the Eleventh Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period April 1, 2011 Through April 30, 2011* [Docket No. 490].

[21] The fees and expenses requested in the January 1, 2011 through April 30, 2011 Applications were $753,961.77. The Court disallowed $1,063.40 in fees and $6.88 in expenses and approved the remaining fees and expenses requested on an interim basis pursuant to the order entered by this Court on July 14, 2011 [Docket No. 527].

[22] On July 22, 2011, K&E filed the *Certification of No Objection Regarding the Twelfth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period May 1, 2011 Through May 31, 2011* [Docket No. 547].

[23] K&E originally requested $318,441.00 in fees in its *Twelfth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period May 1, 2011 Through May 31, 2011*, but reduced its requested fees to $317,803.00 pursuant to an agreement with the U.S. Trustee.

| Date Filed | Period Covered | Total Requested (Fees and Expenses) | Total Allowed (Fees and Expenses) | Fee and Expenses Previously Paid |
|---|---|---|---|---|
| August 4, 2011 (Docket No. 587)[24] | 6/1/11 - 6/30/11 | $304,989.78 | $245,374.88 | $245,374.88 |
| August 31, 2011 (Docket No. 647)[25] | 7/1/11 - 7/31/11 | $467,386.83 | $375,885.03 | $375,885.03 |
| Fourth Interim Fee Request October 3, 2011 (Docket No. 692) | 5/1/11 - 7/31/11 | $1,093,311.13 | $1,090,206.76[26] | $211,572.93 |
| October 17, 2011 (Docket No. 708)[27] | 8/1/11 - 8/31/11 | $429,974.51 | $354,685.10 | $354,685.10 |
| December 20, 2011 (Docket No. 806) | 9/1/11 - 9/30/11[28] | $472,660.04 | Pending | Pending |
| December 21, 2011 (Docket No. 808) | 10/1/11 - 10/26/11[29] | $312,607.11 | Pending | Pending |
| Fifth Interim Fee Request December 22, 2011 | 8/1/11 - 10/26/11 | $1,215,241.66 | Pending | Pending |

---

[24] On August 18, 2011, K&E filed the *Certification of No Objection Regarding the Thirteenth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period June 1, 2011 Through June 30, 2011* [Docket No. 604].

[25] On September 22, 2011, K&E filed the *Certification of No Objection Regarding the Fourteenth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period July 1, 2011 Through July 31, 2011* [Docket No. 659].

[26] The fees and expenses requested in the May 1, 2011 through July 31, 2011 Applications were $1,093,311.13. The Court disallowed $2,059.50 in fees and $1,044.87 in expenses and approved the remaining fees and expenses requested on an interim basis pursuant to the order entered by this Court on November 1, 2011 [Docket No. 724].

[27] On October 31, 2011, K&E filed the *Certification of No Objection Regarding the Fifteenth Application of Kirkland & Ellis LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period August 1, 2011 Through August 31, 2011* [Docket No. 723].

[28] The objection period for the September 2011 fee application expires on January 3, 2012.

[29] The objection period for the October 2011 fee application expires on January 4, 2012.

5

Dated: December 23, 2011

**KIRKLAND & ELLIS LLP**

*/s/ David R. Seligman, P.C.*

James H.M. Sprayregen, P.C. (IL Bar No. 6190206)
David R. Seligman, P.C. (IL Bar No. 6238064)
Jeffrey W. Gettleman (IL Bar No. 0944904)
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile:  (312) 862-2200

*Counsel to the Reorganized Debtor*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CORUS BANKSHARES, INC.[1] | ) | Case No. 10-26881 (PSH) |
|  | ) |  |
| Reorganized Debtor. | ) |  |
|  | ) | Hearing Date:  January 12, 2012 at 10:00 a.m., C.T. |
|  | ) | Objection Deadline:  January 6, 2012, at 4:00 p.m., C.T. |

## FIFTH INTERIM AND FINAL FEE APPLICATION OF KIRKLAND & ELLIS LLP FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE FINAL FEE PERIOD JUNE 15, 2010 THROUGH OCTOBER 26, 2011

Pursuant to 11 U.S.C. §§ 327, 330, and 331; Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); the Retention Order (defined below); the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members* [Docket No. 67] (the "Interim Compensation Order"); the local bankruptcy rules for the United States Bankruptcy Court for the Northern District of Illinois (the "Local Bankruptcy Rules"); and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330* (the "U.S. Trustee Guidelines"), the law firm of Kirkland & Ellis LLP ("K&E"), bankruptcy counsel for the above-captioned debtor and debtor in possession (the "Debtor"), hereby submits its:  (a) fifth interim fee application for approval of monthly fee applications for compensation for services rendered in the amount of $1,145,238.00 and reimbursement of actual

---

[1]   The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is:  Corus Bankshares, Inc. (3592).  The location of the Reorganized Debtor's corporate headquarters and the service address for the Reorganized Debtor is: 32 Broadway, Suite 1104, New York, NY 10004.

and necessary expenses in the amount of $70,003.66 that K&E incurred for the period August 1, 2011, through October 26, 2011 (attached hereto as **Exhibit A**, the "Fifth Interim Fee Application"); and (b) final fee application (the "Final Fee Application")[2] for (i) final allowance of compensation for services rendered in the amount of $5,396,673.10 and reimbursement of actual and necessary expenses in the amount of $190,746.77 for the period from June 15, 2010 through October 26, 2011 (the "Final Fee Period"); and (ii) payment of the unpaid portion of such allowed fees and expenses.  In support of this Final Fee Application, K&E respectfully states as follows.

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 327, 330, and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rule 2016, and Local Bankruptcy Rule 5082-1.

## Background

4.      Prior to its chapter 11 bankruptcy the Debtor was the holding company of Corus Bank, N.A., a regional Midwestern bank engaged in commercial real estate lending, deposit gathering, and servicing the check cashing industry.

5.      On June 15, 2010 (the "Petition Date"), the Debtor filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.  During the chapter 11 case, the Debtor

---

[2]    Pursuant to section (b)(1)(v) of the U.S. Trustee Guidelines, the Reorganized Debtor has had an opportunity to review and approve the request for compensation and reimbursement for the actual and necessary expenses sought herein.

2

operated its business and managed its property pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner was made in this chapter 11 case.

6. On June 29, 2010, the United States Trustee for the Northern District of Illinois (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 39] (the "Committee").

7. Commencing on the Petition Date, the Debtor worked actively with the Committee and its advisors on possible restructuring scenarios in an expansive effort to maximize value for all parties in interest. After extensive discussions with the Committee, which favored liquidation, the Debtor filed *The Debtor's Amended Plan Under Chapter 11 of the Bankruptcy Code* [Docket No. 285] on December 15, 2010, which proposed the orderly wind-down and liquidation of the Debtor. On December 16, 2010, the Bankruptcy Court approved the disclosure statement for this proposed liquidation plan [Docket No. 303], and on December 23, 2010, the Debtor commenced solicitation [Docket No. 322]. Subsequently, six creditors (the holders of a substantial portion of the Debtor's trust originated preferred shares (the "TOPrS")) voted to reject the Debtor's proposed liquidation plan, while only a single creditor in that class voted to accept the liquidation plan, which caused the liquidation plan to be rejected.

8. In the wake of this rejection, extensive discussions ensued among the Debtor, the Committee, and Tricadia (a TOPrS holder) about the propriety of a plan of liquidation. These discussions included meetings among the Debtor, Tricadia, and the Committee, and focused on an extensive analysis of the costs and benefits of a plan of liquidation versus a plan of reorganization. Tricadia and a majority of the other creditors who had voted to reject the

3

liquidation plan, plus one additional creditor, determined that a plan of reorganization would best maximize value for the Debtor's estate.

9.      The Debtor, Tricadia, and certain other creditors thereafter negotiated the terms of a reorganization plan that each believed would maximize recoveries for the Debtor's estate, and each entered into an agreement to support a plan proposed by the Debtor that was consistent with the agreed-upon terms.  Indeed, on May 25, 2011, the Debtor filed plan support letters signed by each of these creditors containing term sheets that outlined the material terms of a plan such creditors would support [Docket No. 464].  In addition, also on May 25, 2011, the Debtor filed a plan of reorganization [Docket No. 463] (the "Plan"), which reflected the material terms agreed to by such creditors.

10.     The Debtor then negotiated with the remainder of the creditors that had actually voted on, and explicitly rejected, the liquidation plan, to garner their support.  In addition, the Debtor worked extensively with the Committee to resolve various issues raised by the Committee regarding the Plan.  All such issues were resolved, and the Committee ultimately supported the Plan.

11.     The consensual chapter 11 Plan provided for a reorganization of the Debtor, whereby the Reorganized Debtor eliminated its existing unsecured debt obligations and converted approximately $362 million of TOPrS into equity in the reorganized company.  The Plan also provided that the Reorganized Debtor would pay cash to holders of another approximately $57 million in unsecured claims.  In order to effectuate distributions under the Plan, the Plan provided that all of the assets of the Debtor's estate would vest in the Reorganized Debtor. The Reorganized Debtor would continue to operate the Debtor's business as a going concern, pursue ongoing litigation with the Federal Deposit Insurance Corporation (the "FDIC"),

4

and make distributions under the Plan.  The Debtor's rights to pursue certain causes of action against former officers and directors who were not released in the Plan vested in a Litigation Trust.

12.     On September 27, 2011, the Court entered the *Order Confirming the Debtor's Third Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [Docket No. 689] (the "Confirmation Order").  On October 27, 2011 (the "Effective Date"), the Plan became effective.

13.     On the Effective Date, there were no more than thirty (30) holders of equity interests.  The Reorganized Debtor emerged as a privately held company, with a new board of directors, who remain responsible for implementing the Plan and operating the business of the Reorganized Debtor.

14.     The outcome of this case is truly remarkable in light of the global economic downturn and its impact on the U.S. financial sector, and represents one of the few successful bank holding company reorganizations following the credit crisis of 2008 and 2009.  Following emergence from Chapter 11, the Reorganized Debtor will continue in real estate-related businesses (its business prior to entering bankruptcy), and will be primarily engaged in purchasing or acquiring interests in real estate and mortgages, with possible secondary activities in related financial services.

**Retention of and Continuing Disinterestedness of Kirkland & Ellis LLP**

15.     By this Court's order dated July 9, 2010,[3] the Debtor was authorized to retain K&E as its counsel effective as of the Petition Date, with regard to the filing and prosecution of

---

[3]     *See Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 66].

this chapter 11 case and all related matters (the "Retention Order"). The Retention Order authorizes the Debtor to compensate K&E in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the U.S. Trustee Guidelines, and any applicable orders of this Court.

16.     As disclosed in the *Declaration of David R. Seligman, P.C. in Support of the Application of the Debtor For Entry of an Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 27, Ex. B] filed on June 17, 2010, the *Supplemental Declaration of David R. Seligman, P.C. in Support of the Application of the Debtor For Entry of an Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 139] filed on September 1, 2010, the *Second Supplemental Declaration of David R. Seligman, P.C. in Support of the Application of the Debtor for Entry of an Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 340] filed on February 7, 2011, the *Third Supplemental Declaration of David R. Seligman, P.C. in Support of the Application of the Debtor for Entry of an Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 375] filed on March 17, 2011, the *Fourth Supplemental Declaration of David R. Seligman, P.C. in Support of the Application of the Debtor for Entry of an Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 506] filed on June 27, 2011, and the *Fifth Supplemental Declaration of David R. Seligman, P.C. in Support of the Application of the*

6

*Debtor for Entry of an Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 773] filed on December 2, 2011 (collectively, the "Previous Declarations"), K&E does not hold or represent any interest adverse to the Debtor's estate and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

17.     K&E may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtor and Reorganized Debtor in this chapter 11 case.  In the Previous Declarations, K&E disclosed its connections to parties in interest that it has been able to ascertain using its reasonable efforts.

18.     K&E performed the services for which it is seeking compensation on behalf of or for the Debtor and its estate and not on behalf of any committee, creditor, or other person.

19.     Except as provided herein or in this Final Fee Application, K&E has received no payment and no promises for payment from any source other than the Debtor for services rendered or to be rendered in any capacity whatsoever in connection with this chapter 11 case.

20.     Pursuant to Bankruptcy Rule 2016(b), K&E has not shared, nor has K&E agreed to share:  (a) any compensation it received or may receive with another person other than with the partners, counsel, and associates of K&E; or (b) any compensation another person or party has received or may receive.

**<u>Kirkland & Ellis LLP's Monthly Fee Applications</u>**

21.     Pursuant to the procedures set forth in the Retention Order and the Interim Compensation Order, professionals may apply for monthly compensation and reimbursement (each such application, a "Monthly Fee Application").  If no notice party objected to a professional's Monthly Fee Application within 14 days after the date of service of such Monthly Fee Application, the applicable professional could submit to the Court a certification of no

objection ("CNO"), whereupon the Debtor was authorized to pay the applicable professional interim compensation of 80% of the fees requested and reimbursement of 100% of the expenses requested.

22.     Furthermore, and also pursuant to the Interim Compensation Order, professionals were to file and serve with the Court an interim request (each, an "Interim Fee Application")[4] for interim Court approval and allowance of the Monthly Fee Applications filed during the period covered by the Interim Fee Application.  If the Court granted the relief requested in the Interim Fee Application, the Debtor was authorized and directed to pay the applicable professional 100% of the fees and expenses requested in the Monthly Fee Applications covered by that Interim Fee Application, less any amounts previously paid in connection with the Monthly Fee Applications. Any payment made pursuant to a Monthly Fee Application or an Interim Fee Application is subject to final approval following a hearing on the professional's final fee application.

23.     Prior to the filing of this Final Fee Application, K&E filed seventeen Monthly Fee Applications for each of the months included in the Final Fee Period and four Interim Fee Applications for the period from June 15, 2010 through July 31, 2011.  The chart attached hereto as **Exhibit B** summarizes the current status of these Monthly Fee Applications and Interim Fee Applications.[5]  Subject to the representations made herein, all fees and expenses sought in each of the Monthly Fee Applications are included as part of this Final Fee Application.

---

[4]     *See Amended First Interim Fee Request of Kirkland & Ellis LLP* [Docket No. 239] (the "First Interim Fee Application"); *Second Interim Fee Request of Kirkland & Ellis LLP* [Docket No. 406] (the "Second Interim Fee Application"); *Third Interim Fee Request of Kirkland & Ellis LLP* [Docket No. 508] (the "Third Interim Fee Application"); and the *Fourth Interim Fee Request of Kirkland & Ellis LLP* (the "Fourth Interim Fee Application) [Docket No. 692].

[5]     The Monthly Fee Applications, as listed in **Exhibit B** attached hereto and incorporated herein by reference, are available (a) on the docket of the United States Bankruptcy Court for the Northern District of Illinois under Case No. 10-26881 (PSH) or (b) upon request from K&E by contacting the undersigned counsel.

24.     The United States Trustee's comments, if any, to the September and October Monthly Fee Applications will be combined with her comments, if any, to this Final Fee Application and Fifth Interim Fee Application.

### Kirkland & Ellis LLP Total Payment Received and Payment Request

25.     As of the date hereof, K&E has received $4,726,863.22 from the Debtor for fees and expenses incurred during the Final Fee Period, which represents 100% of fees and 100% of expenses approved pursuant to the orders entered by this Court approving the First Interim Fee Application [Docket No. 297], the Second Interim Fee Application [Docket No. 428], the Third Interim Fee Application [Docket No. 527], and the Fourth Interim Fee Application [Docket No. 724], and 80% of fees and 100% of the expenses requested in the August 2011 Monthly Fee Application.  As of the date herein, K&E has not received payment for the September 2011 Fee Application or the October 2011 Fee Application.  The objection period for the September 2011 Fee Application expires on January 3, 2012 and the objection period for the October 2011 Fee Application expires on January 4, 2012.  Subject to the representations made herein, all fees and expenses requested in the Fifth Interim Fee Application are included as part of this Final Fee Application.   The fees and expenses requested in the Fifth Interim Fee Application are $1,145,238.00 and $70.003.66, respectively, and the total fees and expenses requested in the Final Fee Application are $5,396,673.10 and $190,746.77, respectively.

26.     During the chapter 11 case, K&E agreed with the United States Trustee to abide by the Third Amended Fee Review Committee Billing Guidelines filed on October 2, 2005 as Docket No. 9950 in the case *In re UAL Corporation, et al.*, Case No. 02-B-48191 (the "Billing Guidelines").  Pursuant to the Billing Guidelines and other agreements with the United States

Trustee, and exercising billing judgment,[6] K&E "wrote off" a total of $709,607.00 in fees and $37,548.41 in expenses during the chapter 11 case.  In addition, before approving K&E's Interim Fee Applications, the Court reduced K&E's fees by $10,104.90 and expenses by $1,232.25. Therefore, during the chapter 11 case, K&E's fees were reduced by a total of $719,711.90, and expenses were reduced by a total of $38,780.66.[7]

<u>**Reasonable and Necessary Services Rendered by Kirkland & Ellis LLP – Categorized by Matter**</u>

27.     The professional services that K&E rendered during the Final Fee Period are grouped into the numbered and titled categories of the subject matters (each a "Subject Matter" and, collectively, the "Subject Matters") described herein, and listed in **Exhibit D** attached hereto and incorporated herein by reference.

28.     <u>Matter 2 - Chapter 11 Bankruptcy Filing</u>

(Fees:  $9,415.00; Hours: 18.10)

This Subject Matter includes legal services provided in connection with filing the Debtor's chapter 11 petition and related pleadings and notices in the initial days of this chapter 11 case.  Specifically, and without limitation, K&E attorneys and paraprofessionals performed services including, but not limited to, (a) drafting and filing a chapter 11 petition for the Debtor and (b) preparing to represent the Debtor at the first day hearing.  On the Petition Date, in addition to the voluntary petition for relief filed by the Debtor under chapter 11 of the Bankruptcy Code, the Debtor also filed a number of first day motions with the Bankruptcy

---

[6]   *See In re Wildman*, 72 B.R. 700, 709–10, (Bankr. N.D. Ill. 1987).

[7]   Attached hereto as **Exhibit F** is a chart summarizing all reductions to K&E's fees and expenses during the chapter 11 case.

Court.  The Bankruptcy Court entered several first day orders in connection with the first day motions that, among other things:  (1) protected the Debtor's estate; (2) eased the strain on the Debtor's relationships with certain essential constituents; and (3) allowed the Debtor to retain certain advisors necessary to assist the Debtor with the administration of the chapter 11 case.

Notably, the Debtor was one of only a few successful bank holding companies that had the opportunity to operate in chapter 11 and have a meaningful opportunity to reorganize following the credit crisis of 2008 and 2009.  As a result, the Debtor's chapter 11 filing raised many new issues for which K&E was required to craft creative solutions.

29.   <u>Matter 3 - Asset Disposition</u>

(Fees:  $476.00; Hours: 0.70)

This Subject Matter includes time spent analyzing and advising the Debtor with respect to the potential sale of certain property belonging to the Debtor.  Specifically, K&E spent time advising the Debtor regarding a potential sale of one of its loan participations.

30.   <u>Matter 4 - Automatic Stay Matters</u>

(Fees:  $9,704.50; Hours: 20.10)

This Subject Matter includes time spent by K&E advising professionals providing services to the Debtor in connection with litigation ongoing prior to the filing of this chapter 11 case and the imposition of the automatic stay on the Petition Date.  Specifically, K&E attorneys spent time, including, but not limited to:  (a) drafting and revising suggestions of bankruptcy; (b) researching issues relating to a demand received in connection with a loan participation agreement; (c) researching issues relating to the collection efforts of both a prepetition litigant and a landlord; and (d) corresponding with opposing counsel with respect to the foregoing.

31.     Matter 5 – Business Operations

(Fees: $67,817.50; Hours: 112.70)

Before and after the filing of this chapter 11 case, K&E attorneys worked closely with the Debtor's management to provide advice and assist management to implement procedures with respect to their business operations to ensure compliance with provisions of the Bankruptcy Code and the first day orders entered by the Court.  In particular, K&E attorneys spent time:  (a) drafting and filing cash and case management motions and orders; (b) analyzing the cash management requirements and the Debtor's financial statements; and (c) assisting the Debtor with preparing and analyzing its monthly cash flow projections.

This Subject Matter also describes time spent advising the Debtor regarding legal issues implicated by its business operations and substantive and procedural matters related thereto in the context of this chapter 11 case, including time spent:  (a) researching, reviewing, and analyzing issues with respect to the Debtor's agreement with its stock transfer agent and the appraisal of the Debtor's intellectual property, including its trade name; (b) analyzing loan documents; (c) advising the Debtor with respect to personnel issues, loan participations, and post-bankruptcy transition issues; and (d) working with the FDIC on revised escrow arrangements to hold approximately $265 million in disputed tax refunds, which ultimately allowed the Debtor to earn interest on these refunds during the pendency of the litigation with the FDIC.  This required K&E to draft and negotiate a revised stipulation with the FDIC, and draft a motion seeking approval of the revised stipulation and escrow arrangement [Docket No. 563].

12

32.     <u>Matter 6 – Case Administration</u>

(Fees:  $74,769.00[8]; Hours:  201.50)

This Subject Matter includes legal services not described under another matter, and includes time spent on a variety of administrative tasks necessary to ensure the efficient and smooth administration of the Debtor's chapter 11 case.  Specifically, K&E spent time, including, but not limited to, (a) assisting the Debtor in fulfilling its duties as debtor in possession and (b) generally complying with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court, and other applicable laws.  In addition, K&E spent time:

- ♦ monitoring critical dates and works-in-progress to manage the case efficiently and ensure timely completion of open tasks;

- ♦ updating the pleading template to reflect ongoing Court orders and procedures and U.S. Trustee staffing changes;

- ♦ updating the master service list to include new parties to this chapter 11 case;

- ♦ preparing, tracking, and filing affidavits of service;

- ♦ analyzing case staffing issues; and

- ♦ maintaining a database of documents relating to this chapter 11 case.

33.     <u>Matter 7 – Claims Administration and Objections</u>

(Fees:  $154,976.00; Hours: 283.80)

This Subject Matter includes legal services related to the administration and resolution of claims against the Debtor.  In particular, this Subject Matter includes time spent: (a) drafting, filing, and obtaining court approval of the *Motion of the Debtor for Entry of an Order (A) Setting Bar Dates for Filing Proofs of Claim and (B) Approving the Form and Manner*

---

[8]   Fees set forth in this Subject Matter reflect a reduction in certain billing rates pursuant to an agreement with the U.S. Trustee.

13

*of Notice Thereof* [Docket No. 28] (the "Bar Date Motion"); (b) researching and analyzing issues relating to the bar date and late filed claims; (c) drafting and publishing the notice of the bar date; (d) researching, drafting, and filing ten omnibus objections to proofs of claim, related declarations, and replies to responses to the omnibus objections; and (e) preparing and analyzing final orders expunging, reducing, and re-classifying certain claims.

In addition to the bar date and omnibus claims objection process, K&E also spent significant time reviewing and analyzing certain actual and potential claims against the Debtor's estate, including the claims of shareholders, equity interests, directors and officers, holders of the Debtor's TOPrS, the FDIC, and Federal Express. K&E also spent time researching and analyzing employee claim issues related to taxes, the Debtor's 401(k) plan, and the termination of the Debtor's supplemental executive retirement plans (the "SERP"). In connection with the claims analysis process, K&E spent time researching various legal issues, including issues related to sections 510(b) and 548 of the Bankruptcy Code. As a result of their efforts, K&E was able to successfully negotiate and draft stipulations with the Pension Benefit Guaranty Corporation (the "PBGC") and the FDIC regarding their respective claims. Throughout the entire claims administration process, K&E also spent significant time corresponding with and responding to inquiries from certain creditors and shareholders with respect to the foregoing.

34.    Matter 8 – Contested Matters and Adversary Proceedings

(Fees: $254,099.50; Hours: 436.40)

This Subject Matter includes time spent addressing contested matters related to this chapter 11 case and also relating to potential future contested matters. Specifically, K&E attorneys spent substantial time filing an adversary proceeding in this Court, *Corus Bankshares, Inc. v. Tracy Jones, et al.*, Case No. 10-01357 [Docket No. 36], seeking to extend the automatic

stay to two former officers and directors who were defendants in an action in the United States
District Court for the Northern District of Illinois that involved various alleged violations of the
Securities Exchange Act (the "Securities Litigation").  K&E spent considerable time researching
and developing strategies and tactics and analyzing issues in relation to the Securities Litigation
with respect to its possible effect on the Debtor's estate.  It was necessary to draft and file
various documents, including the complaint, motions to extend the automatic stay and the period
in which to remove actions, and replies to the plaintiffs.  Throughout the course of the Securities
Litigation, K&E spent significant time dealing with discovery issues, including analyzing
documents for relevance and privilege issues and drafting privilege logs.  The Securities
Litigation was ultimately settled.  K&E spent significant time analyzing issues, conducting legal
research, reviewing and analyzing the stipulation of settlement and order approving the
settlement in order to assess the effect of the proposed settlement on the Debtor and its estate,
and to determine whether to formally challenge the settlement.

In addition, K&E attorneys spent time on other adversary issues, including
managing the Debtor's response to the ongoing investigation commenced by the Special
Inspector General for the TARP program (the "SIGTARP") in connection with Corus Bank's
application for TARP funds prior to the Corus Bank receivership.  Specifically, K&E attorneys
spent time:

♦   reviewing and analyzing documents in response to the SIGTARP's subpoena;

♦   analyzing disclosure regulations and privilege issues; and

♦   preparing presentations for and attending meetings with the SIGTARP.

K&E attorneys also spent time:    (a)  researching and analyzing potential
avoidance actions and potential estate causes of action; (b) tracking the progress of the Debtor's
outstanding litigation matters; (c) analyzing official statements from the FDIC regarding actions

15

against directors and officers of failed banks; and (d) drafting a memorandum analyzing potential FDIC claims against the Debtor.

35.   Matter 9 – Corporate and Securities Matters

(Fees:  $425,476.50; Hours:  581.40)

During the Final Fee Period, K&E worked closely with the Debtor to analyze certain corporate issues related to the Debtor's reporting and disclosure obligations under federal securities laws.  Among other tasks, K&E reviewed and prepared correspondence, pleadings, and other documents related to corporate governance and federal securities laws, including an equity trading motion and a record date motion, and documents filed with the U.S. Securities and Exchange Commission (the "SEC"), including Form 8-Ks.  In addition, K&E assisted the Debtor in filing their Form 15 with the SEC, which provided notice of termination of registration and suspension of duty to file reports pursuant to the applicable sections of the Securities Exchange Act of 1934.

During the Final Fee Period, K&E also worked closely with the Debtor to analyze the fiduciary duties and obligations of the Debtor's officers and directors and other matters related to corporate governance, and prepared various presentations for and participated in telephone conferences and meetings with the Debtor.  K&E researched and analyzed the historical board members and officers of the Debtor, and analyzed issues related to corporate governance, the equity of the Reorganized Debtor, and merger and reincorporation mechanics following the Effective Date.  In preparation for the emergence of the Reorganized Debtor, K&E assisted the Reorganized Debtor in analyzing and acquiring new directors' and officers' insurance policies, drafted a new charter, by-laws, and resolutions, and scheduled and prepared for post-confirmation board meetings.

36.    <u>Matter 10 – Creditor Communications</u>

(Fees:  $693,120.50; Hours:  1,040.90)

This Subject Matter includes time spent:  (a) responding to numerous inquiries from creditors regarding the Debtor's chapter 11 filing, the motions filed and orders entered in this chapter 11 case, adversary proceedings, settlements, the Debtor's directors' and officers' insurance policies (the "D&O Policies"), and the Plan and disclosure statement; and (b) coordinating and collaborating with creditor constituencies such as the Committee and holders of the Debtor's TOPrS.

Initially, K&E spent time assisting the Debtor in preparing for the section 341 meeting, which took place on July 21, 2010.  After the formal appointment of the Committee, K&E devoted significant resources to educating the Committee with respect to the Debtor's history, corporate structure, financial situation, and business operations.  K&E also represented the Debtor in numerous in-person and telephonic meetings with the representatives for the Committee and TOPrS holders on a variety of topics.  At these meetings, K&E provided the Committee and TOPrS holders with critical information about the Debtor's businesses through detailed, high level, confidential presentations.  K&E also negotiated several key issues in this chapter 11 case at these meetings, including aspects of the chapter 11 Plan.  The Debtor and the Committee extensively discussed moving from a liquidation plan to a reorganization plan, and resolved each such issue to arrive at a consensual Plan.

During the Final Fee Period, K&E also spent significant time negotiating a production of documents to the Committee under Rule 2004, to enable the Committee to conclude its due diligence with respect to the Plan.  Specifically, K&E spent time: (a) drafting confidentiality agreements, non-disclosure agreements, and the Debtor's *Emergency Routine*

17

*Motion of the Debtor for Entry of an Order Pursuant to Bankruptcy Rule* 2004 [Docket No. 199]; (b) researching and responding to the Committee's diligence requests in coordination with the Debtor; (c) reviewing and redacting responsive documents with respect to privilege issues and preparing a privilege log; and (d) corresponding with the Committee, its advisors, and certain shareholders with respect to the issuance of subpoenas to third parties in connection therewith.

37.     Matter 11 – Employee Issues

        (Fees:  $4490,615.00; Hours: 597.60)

        This subject matter includes time spent by K&E analyzing a number of employee-related issues in the context of this chapter 11 case.  This Subject Matter also includes substantial time spent preparing and filing motions in support of the Debtor's employee programs, including time spent:

♦   drafting and filing the *Motion of the Debtor for Entry of an Order Authorizing the Debtor to: (A) Pay Certain Prepetition Wages, Salaries, and Reimbursable Employee Expenses; (B) Pay and Honor Employee Benefits; and (C) Continue Employee Compensation and Employee Benefit Programs* [Docket No. 6] (the "Wages Motion"); and

♦   analyzing issues related to executive retention, unemployment compensation, and the departure of the Debtor's Chief Financial Officer.

        Additionally, K&E assisted the Debtor in resolving issues related to the freeze and termination of the Debtor's defined benefit pension plan (the "Pension Plan").  With respect to any employees of the Debtor who continued to participate in the Pension Plan after the Petition Date, the Debtor amended the Pension Plan, effective May 14, 2010, to freeze participation and benefit accruals as of such date.  This process involved extensive research, financial analysis, and auditing of the Pension Plan.  In order to achieve its reorganization, the Debtor's Pension Plan needed to be terminated.  After extensive, good faith, arm's-length

18

negotiations, the Debtor and PBGC reached a settlement agreement regarding termination of the Pension Plan.

In order to reach a settlement with PBGC, which resulted in significant savings to the estate, K&E spent time researching and analyzing PBGC regulations and PBGC requests for information, and conducted extensive negotiations with PBGC.   K&E engaged in telephone conferences and correspondence between K&E attorneys across various practice groups regarding Pension Plan termination issues, and K&E conferred with and advised the Debtor throughout the process in regard to the funding obligations, premium payments, participant payouts, fiduciary liability rules, and the ongoing settlement negotiation process.   Once K&E was able to settle the PBGC's claims against the Debtor, K&E then drafted, revised, and filed a settlement agreement, a related motion, and a PBGC trusteeship agreement.

38.     Matter 12 – Executory Contracts

(Fees:  $15,343.50; Hours: 27.50)

In connection with the Debtor's restructuring initiatives, K&E worked with the Debtor to review and analyze all of the Debtor's contractual obligations to identify contracts and leases that were either profitable or burdensome to the Debtor's estate and that could be assumed or rejected pursuant to section 365 of the Bankruptcy Code.   In particular, K&E spent time researching and analyzing issues relating to the rejection and assumption of unexpired contracts and unexpired leases and drafting pleadings related thereto, including the *Motion of the Debtor for Entry of an Order Pursuant to Section 365(d)(4) of the Bankruptcy Code Extending the Time Within Which the Debtor Must Assume or Reject its Unexpired Lease of Nonresidential Real Property* [Docket No. 145] and corresponding with the Debtor with respect to the foregoing.

19

39.   Matter 13 – Regulatory Matters

(Fees:  $157,207.00; Hours: 309.00)

This Subject Matter relates to time spent researching and analyzing issues relating to regulatory matters, principally related to Corus Bank's receiver, the FDIC.  Specifically, K&E attorneys spent time:  (a) developing strategies and researching precedent related to regulatory matters facing the Debtor, including issues connected with the Debtor's retention of certain records and creditor voting behavior; (b) researching issues in connection with the FDIC receivership of the bank and potential FDIC actions against the Debtor's directors and officers; (c) conferring with counsel to the FDIC regarding Plan issues; (d) participating in telephone conferences with the Office of the Comptroller of Currency regarding confidentiality and disclosure issues; and (e) advising the Debtor regarding regulatory compliance issues and potential FDIC claims.

Lastly, this Subject Matter includes time spent by K&E working to maximize the return to the estate from certain income tax refunds held in an escrow account.  K&E spent significant time researching various investment vehicles for the refunds, and conferring with the Debtor and the FDIC about these research results.  K&E then drafted a stipulation and escrow agreement between the Debtor and the FDIC regarding the escrow account, including a subsequent amendment.  K&E drafted and filed a motion to approve the stipulation [Docket No. 148], and then spent time advising the Debtor on how to implement the stipulation and escrow account.

40.   <u>Matter 14 – Fee and Employment Applications - Non-K&E</u>

(Fees:  $78,570.50; Hours:  156.20)

This Subject Matter includes legal services related to retention applications of the Debtor's advisors, other than K&E.  Specifically, K&E attorneys and paraprofessionals worked to prepare and file the:  (a) the BMC retention application [Docket No. 8]; (b) the Kinetic retention application [Docket No. 25]; (c) the Plante & Moran retention application [Docket No. 26]; and (d) the interim compensation motion [Docket No. 30].  K&E also spent time researching issues pertaining to the objections and responses to the Kinetic retention application and issues related to the retention of FTI Consulting, Inc.

At the Debtor's request, and as is customary in large chapter 11 cases, K&E assisted the Debtor's professionals with their requests for payment under the Interim Compensation Order, by:

♦   assisting Kinetic and Plante & Moran with the preparation, revision, and filing of their monthly and interim fee applications and related certificates of no objection;

♦   researching and analyzing issues relating to those fee applications.

41.   <u>Matter 15 – Fee and Employment Applications - K&E</u>

(Fees:  $153,387.50; Hours:  322.50)

This Subject Matter includes services performed by K&E in connection with K&E's retention and fee applications, including, without limitation:  (a) drafting and filing the *Application of the Debtor For Entry of an Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 27] (the "K&E Retention Application"); (b) ensuring K&E's continued disinterestedness by following its comprehensive conflicts-checking protocol; (c) drafting the Supplemental Seligman Declarations in support of K&E's retention; (d)  reviewing

21

and revising the Debtor's invoices to ensure compliance with the Bankruptcy Code, the Interim Compensation Order, the Bankruptcy Rules, the Local Bankruptcy Rules, and the U.S. Trustee Guidelines; and (e) drafting, revising, and filing K&E's monthly and interim fee applications and related certificates of no objection.

42.  <u>Matter 16 – Hearings</u>

(Fees:  $184,484.00; Hours:  356.20)

This Subject Matter includes legal services rendered in preparation for and attendance at the various hearings held during the Final Fee Period (collectively, the "Hearings").  Specifically, K&E performed services including, but not limited to:

♦  drafting and revising agendas, talking points, and declarations in support of various motions to be heard at the Hearings;

♦  preparing the necessary hearing binders, exhibits, and orders to be used in connection with the Hearings;

♦  meeting with various witnesses in preparation for their testimony;

♦  preparing for the Hearings;

♦  coordinating the consolidation and scheduling of Hearings; and

♦  appearing at and arguing matters at the Hearings.

43.  <u>Matter 17 – Plan and Disclosure Statements</u>

(Fees:  $1,422,587.00; Hours: 2,397.80)

This Subject Matter includes legal services related to the preparation and approval of the Debtor's disclosure statements and plans of liquidation and reorganization.  Commencing on the Petition Date, the Debtor worked actively with the Committee and its advisors to explore various restructuring possibilities.  After extensive discussions with the Committee, who initially favored liquidation, K&E assisted the Debtor to negotiate, draft, and file *The Debtor's Amended Plan Under Chapter 11 of the Bankruptcy Code* [Docket No. 285], and associated disclosure

22

statement, which proposed the orderly wind-down and liquidation of the Debtor. However, this liquidation plan was not accepted by creditors.

Thereafter, K&E, on behalf of the Debtor, engaged in extensive discussions and negotiations with the Committee, Tricadia and other stakeholders about the propriety of a plan of liquidation. These discussions included meetings and telephone conferences among the Debtor, Tricadia, and the Committee, and focused on an extensive analysis of the costs and benefits of a plan of liquidation compared with a plan of reorganization. K&E also spent extensive time researching alternative plan structures, developing strategies in connection with the formation of the Plan, and drafting four motions seeking to extend the Debtor's exclusive period within which to file a plan. A consensus was ultimately reached that a plan of reorganization would best maximize value for the Debtor's estate. Thus, K&E negotiated, drafted, and filed the Plan, the disclosure statement, the motion and order to approve the disclosure statement, and related notices and other solicitation documents and plan supplement materials.

K&E spent significant time working on confirmation of the Plan, including, but not limited to: (a) researching and analyzing issues relating to the timing of confirmation of the Plan; (b) drafting the Debtor's proposed confirmation order, a confidentiality agreement for potential Plan sponsors, and a notice of extension of the Plan voting and objection deadlines; (c) analyzing various issues related to balloting, voting, and voting results; (d) analyzing and drafting responses to objections to the Plan and disclosure statement and negotiating with various creditors regarding such objections; and (e) responding to the FDIC regarding its claim that TOPrS debt should be subordinated to all other debt.

An overwhelming majority of creditors (in both number and amount) that originally voted to reject the liquidation plan voted to accept the Plan, and on September 27,

23

2011, the Court entered the Confirmation Order.  The Plan's Effective Date took place on October 27, 2011.  Prior to the emergence of the Reorganized Debtor, K&E spent significant time:

- ♦ analyzing Plan implementation issues, including transitioning the Debtor's estate to the plan administrator;

- ♦ drafting and revising the litigation trust agreement;

- ♦ drafting the brief in support of confirmation;

- ♦ responding to potential and actual objections to the Plan;

- ♦ analyzing issues regarding distribution mechanics;

- ♦ conferring with creditors and the Committee regarding distributions; and

- ♦ analyzing issues regarding compensation for the creditors' designee under the Plan.

44.     <u>Matter 18 – Schedules and Statement of Financial Affairs</u>

     (Fees:  $21,629.50; Hours: 45.10)

This Subject Matter includes time spent by K&E attorneys and paraprofessionals advising the Debtor and other advisors in connection with the preparation and filing of the Debtor's schedules of assets and liabilities and statements of financial affairs.  In particular, K&E attorneys spent time preparing and filing:  (a) the *Schedules of Assets and Liabilities of Corus Bankshares, Inc.* [Docket No. 53]; (b) the *Statement of Financial Affairs of Corus Bankshares, Inc.* [Docket No. 54] pursuant to Bankruptcy Rule 1007(c); and (c) preparing and filing an *Amended Form 7 Statement of Financial Affairs 3(c)* [Docket No. 91].

45.     <u>Matter 19 - Tax Issues</u>

     (Fees:  $218,776.00; Hours: 283.70)

This Subject Matter includes K&E services related to the Debtor's tax obligations, including, but not limited to: (a) analyzing and researching issues relating to the Debtor's

accounting obligations, tax planning, worthless stock deductions, and net operating losses; (b) analyzing and researching tax aspects of a potential restructuring transaction; (c) analyzing, drafting and revising the tax sections of the Debtor's Plan and disclosure statement; (d) advising the Debtor with respect to its taxes, SEC reporting requirements, net operating loss structure, and related tax refund issues; (e) conferring and corresponding with the Debtor's management, independent auditors and accountants, K&E attorneys, and various creditors regarding tax issues; and (f) analyzing post-confirmation tax issues regarding the new charter and the management and ownership of the Reorganized Debtor.

46.    <u>Matter 20 - Travel</u>

(Fees:  $35,554.00; Hours: 42.70)

This Subject Matter includes time spent by K&E attorneys and paraprofessionals traveling while representing the Debtor.  K&E billed the Debtor for one-half the total time that K&E professionals spent for non-working travel.  Specifically, during the Fee Period, one K&E attorney traveled to Washington, D.C. to attend the September 28, 2010 meeting with the SIGTARP.  Additionally, K&E attorneys travelled to New York, New York to attend:

- ♦ Committee meetings;

- ♦ a conference with a purchaser of the Debtor's TOPrS;

- ♦ a conference with the Debtor and certain of its creditors regarding case strategy, asset wind-up, and liquidation issues;

- ♦ conferences with the Debtor, the Committee, and certain creditors to negotiate the terms of the Plan; and

- ♦ organizational conferences with the prospective board of directors and chief executive officer of the Reorganized Debtor regarding post-bankruptcy transition issues.

47.    <u>Matter 21 – U.S. Trustee Matters</u>

(Fees:  $58,661.50; Hours:  102.70)

This Subject Matter includes time spent by K&E attorneys with respect to matters raised by the U.S. Trustee.  In particular, K&E attorneys spent time addressing U.S. Trustee operating guidelines and the financial reporting requirements of the Bankruptcy Rules, including: (a) analyzing the reporting requirements of Bankruptcy Rule 2015.3; (b) drafting and filing the Debtor's 2015.3 motion and related order [Docket Nos. 50 and 63]; and (c) drafting, preparing, and filing the Debtor's monthly operating reports.  K&E attorneys also spent time corresponding and participating in conferences with the U.S. Trustee with respect to:  (i) K&E's, Kinetic's, and Plante & Moran's fee statements and applications; (ii) payment of U.S. Trustee fees; (iii) the terms of the Debtor's exclusivity period and the potential date for a hearing on confirmation of the Plan; and (iv) the U.S. Trustee's comments to the Plan and disclosure statement.

48.    <u>Matter 22 – Tax Refund Litigation with FDIC</u>

(Fees:  $512,479.00; Hours:  967.00)

This Subject Matter includes time spent by K&E attorneys researching and analyzing issues arising in connection with *Corus Bankshares, Inc. v. Federal Deposit Insurance Corporation*, Case No. 10-01362 [Docket No. 37], the adversary proceeding filed by the Debtor seeking a declaratory judgment as to the ownership of certain of the Debtor's tax refunds (the "Tax Refund Litigation").  In connection with the Tax Refund Litigation, K&E attorneys spent significant time:   (a) researching, drafting, revising, and ultimately filing the complaint on June 28, 2010; (b) developing and analyzing strategies and tactics; (c) drafting and filing an objection and response to the FDIC's motion to dismiss the Tax Refund Litigation [Docket No. 24]; (d) researching and analyzing the FDIC's motions to withdraw the reference and to stay the

26

Tax Refund Litigation [Docket Nos. 18 and 20]; (e) drafting a motion to remove; (f) analyzing

issues relating to the Committee's motion to intervene, an intra-company tax sharing agreement,

and tax refund accounting; (g) developing a briefing schedule; (h) analyzing discovery requests

received from the FDIC and drafting the Debtor's discovery requests to the FDIC; (i) preparing

the Debtor's discovery disclosures; (j) reviewing documents for responsiveness to discovery

requests and privilege issues; (k) conferring and negotiating with the FDIC; (l) corresponding

with counsel to the Committee; and (m) participating in telephone conferences, meetings, and

correspondence with the Debtor.

   In addition, this Subject Matter includes time spent in connection with the *Corus*

*Bankshares, Inc. v. Federal Deposit Insurance Corporation*, Case No. 10-01653 [Docket No.

119] (the "Receivership Claim Proceeding"), appealing the decision of the FDIC denying the

Debtor's claim against the FDIC receivership for payment of its tax refund and seeking a

declaratory judgment as to the Debtor's right to the validity, priority, and interest in its claim.

Specifically, K&E attorneys spent time:

-  researching and developing strategies with respect to the FDIC's denial of the Debtor's claim, including the potential filing of an appeal;

-  researching issues related to serving a complaint upon certain government agencies;

-  conducting legal research and drafting and filing an amended complaint; and

-  analyzing the response of the FDIC to the Debtor's amended complaint.

49. <u>Matter 23 – Insurance</u>

   (Fees:  $81,436.00; Hours:  144.20)

   This Subject Matter relates to insurance issues during this chapter 11 case.  K&E

attorneys spent time in connection with the Debtor's D&O Policies, including:  (a) analyzing

issues relating to post-Effective Date insurance coverage; (b) analyzing the policy terms of the

27

D&O Policies; (c) conducting legal research and drafting memoranda regarding whether the

D&O Policies should be considered executory contracts under Seventh Circuit law; and (d)

conducting legal research and drafting a memorandum regarding the "insured versus insured"

exclusion contained in the D&O Policies and its impact on the Debtor's ability to bring a cause

of action against former directors and officers.

K&E attorneys also spent time in connection with general insurance issues,

including:  (a) drafting a memorandum relating to the Debtor's insurance coverage;

(b) researching issues relating to workers' compensation insurance; (c) researching issues

relating to unemployment insurance exemptions; (d) analyzing issues relating to the ongoing

health insurance coverage of the Debtor's employees subsequent to the Effective Date of the

Debtor's Plan; and (e) corresponding and conferring by telephone with the Debtor's management

in regard to the foregoing.

50.    <u>Matter 24 – Capital Structure Analysis</u>

(Fees:  $329,791.00; Hours:  636.70)

This Subject Matter relates to time spent in connection with the solicitation and

voting procedures in relation to the Debtor's plans.  One of the primary challenges of this chapter

11 case was the difficulty in identifying and communicating with the actual beneficial holders of

the Debtor's TOPrS debt.  Because the TOPrS were sold into collateralized debt obligations

("CDOs"), the TOPrS indenture trustees, of which the Committee is comprised, were only in

privity with the trustees of the CDOs.  It was the CDO trustees who were in privity with the

beneficial holders.  Therefore, solicitation of and communication with the TOPrS holders was

difficult.  In order to obtain contact information for the TOPrS holders, on August 5, 2010, the

Debtor filed the *Motion to Expedite Emergency Routine Motion of the Debtor for Entry of an*

*Order Seeking Authority to Conduct Examinations Pursuant to Bankruptcy Rule 2004* [Docket No. 104]. The Debtor subsequently served subpoenas on 25 parties and collected responsive materials. Based on a review of these materials, the Debtor determined that the TOPrS were held by a total of approximately 30 different CDOs.

In relation to the foregoing, K&E attorneys spent time researching Rule 2004 and related privilege issues for the purpose of examining documents related to voting mechanics. K&E drafted and filed various motions, including a motion regarding the turnover of documents to the Committee and the motion seeking authority to conduct Rule 2004 examinations. After obtaining that authority, K&E spent time drafting, filing, and serving the Rule 2004 subpoenas, analyzing the documents produced in response, and corresponding with subpoenaed parties and their counsel.

### Actual and Necessary Expenses

51. It is K&E's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also K&E's policy to charge its clients only the amount actually incurred by K&E in connection with such items. Examples of such expenses are overnight mail, courier delivery, transportation, computer-assisted legal research, photocopying, airfare, meals, and lodging.

52. K&E has negotiated a discounted rate for Westlaw computer-assisted legal research, which is approximately $125 per hour of online use for the standard Westlaw databases. Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost-effective than using traditional (non-computer-assisted legal research) techniques.

53.    A summary of expenses by type, as well as a detailed itemization and description of the disbursements made by K&E on the Debtor's behalf during the Final Fee Period is included in each Monthly Fee Application (incorporated herein by reference) and is attached hereto as **Exhibit E**.  The disbursements for the Final Fee Period total $190,746.77.

**Requested Compensation and Reimbursement of
Kirkland & Ellis LLP Should Be Allowed**

54.    Section 331 of the Bankruptcy Code provides for compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  See 11 U.S.C. § 331.  Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).  Section 330(a)(3) also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including:
>
> (a)    the time spent on such services;
>
> (b)    the rates charged for such services;
>
> (c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (e)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (f)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

55.    Final award of the fees and expenses requested herein is supported by the results achieved for the Debtor, its creditors and other stakeholders, given the Debtor's circumstances and uncertain prospects as of the Petition Date.  As an initial matter, the complexities of this chapter 11 case required substantial outlays of time and effort by K&E attorneys and paraprofessionals performing an array of services in connection with its representation of the Debtor as debtors in possession in this chapter 11 case.  As noted above, K&E's expertise and leadership as restructuring counsel facilitated the Debtor's smooth and seamless transition into chapter 11.  The "first day" motions that K&E prepared and filed enabled the Debtor's business operations to continue uninterrupted while the Debtor and their retained professionals evaluated and pursued various operational and restructuring initiatives.  As a result of these initial efforts, the Debtor was able to minimize the negative impacts resulting from the commencement of this chapter 11 case.

56.    Additionally, with the assistance of K&E, the Debtor  successfully navigated through various obstacles presented in this chapter 11 case including (a) stabilizing relations with vendors, customers, and employees; (b) drafting and negotiating an initial plan of liquidation and related disclosure statement; (c) formulating a revised business plan; (d) planning and executing the emergence of the Reorganized Debtor as a going-concern; (e) negotiating settlements with major creditor constituencies, including PBGC and the FDIC; (f) conducting extensive diligence to locate and communicate with holders of the Debtor's TOPrS debt; (g) pursuing Tax Refund Litigation with the FDIC in order to maximize the value of the Debtor's estate; and (h) formulating and negotiating a consensual Plan of reorganization with major creditor constituencies, drafting the accompanying disclosure statement, and obtaining timely confirmation and consummation of the Plan.

57.     A close look at the services performed by K&E during the course of this chapter 11 case makes clear that K&E used the vast legal expertise of its diverse practice groups in an efficient and effective manner to achieve exemplary results for the Debtor under the circumstances.   K&E respectfully submits that the services for which it seeks compensation in the Final Fee Application were, at the time rendered, necessary for and beneficial to the Debtor and its estate and were rendered in order to protect and preserve the value of the Debtor's estate. K&E further believes that the services rendered to the Debtor were performed economically, effectively, and efficiently and benefited the Debtor and its estate and creditors.

58.     The hourly rates and corresponding rate structure utilized by K&E in this chapter 11 case are equivalent to the hourly rates and corresponding rate structure predominantly used by K&E for restructuring, workout, bankruptcy, insolvency, and comparable matters and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.   These rates and the rate structure reflect that such particular matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in this chapter 11 case.

59.     Moreover, K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.   Hourly rates vary with the experience and seniority of the individuals assigned, and are attached hereto as **Exhibit C**.   These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged by other similarly-situated law firms.

60.     The great majority of the services performed by partners and associates of K&E were rendered by K&E's Restructuring Group.   K&E enjoys a national and international

32

reputation for its expertise in financial reorganizations and restructurings of troubled companies, with more than 100 attorneys specializing in this area of law.  The attorneys at K&E have represented debtors in many bankruptcy cases in this and other jurisdictions, including, among others:  *TMP Directional Marketing, LLC*, *Friendly Ice Cream Corporation*, *Nebraska Book Company, Inc.*; *Caribe Media, Inc.*; *Appleseed's Intermediate Holdings LLC*; *Local Insight Media Holdings, Inc.*; *Visteon Corporation*; *Muzak Holdings LLC*; *Stallion Oilfield Services Ltd.*; *Masonite Corporation*; *Portola Packaging, Inc.*; *Hines Horticulture, Inc.*; *Pierre Foods Inc.*; *ACG Holdings, Inc.*; *Sbarro, Inc.*; *The Great Atlantic  & Pacific Tea Co.*; *InSight Health Services Holdings Corp.*; *Chemtura Corporation*; *Tronox Inc.*; *Charter Communications, Inc.*; and *Wellman, Inc.*.  As a consequence, K&E brings a particularly high level of expertise to this chapter 11 case, which inures to the benefit of the Debtor, its estate and all parties in interest.

61.     In addition, K&E worked efficiently.  K&E carefully assigned the work to appropriate attorneys or paraprofessionals according to the experience and level of expertise required for each particular task.  K&E's billing efficiency is further illustrated by the ratio of partner to associate fees accrued during this chapter 11 case.  In particular, K&E utilized its restructuring associates and paraprofessionals (with on average lower billing rates) to perform myriad day-to-day tasks to pass on a lower overall cost to the Debtor.  Where appropriate, K&E partners played more of an active, hands-on role to ensure that the Debtor would have immediate access to certain specialized expertise that only experienced K&E partners could deliver.  This was particularly true in specialized practice areas outside of K&E's restructuring practice, such as tax, litigation, and employee benefits.

62.     K&E's strategic staffing ensured that the Debtor received the most cost-effective representation during the course of this chapter 11 case.  In sum, K&E attorneys worked a total

33

of 7,746.80 hours and paraprofessionals worked a total of 1,337.70 hours, accounting for 85% and 15%, respectively, of the total time billed by K&E attorneys and paraprofessionals in this chapter 11 case.  Overall, K&E attorneys and paraprofessionals billed a total of 9,084.50 hours in this chapter 11 case, at a blended average hourly rate of $599.96.

63.     K&E respectfully submits that the professional services rendered by K&E on behalf of the the Debtor's estate during this chapter 11 case were necessary and appropriate given the complexity of this chapter 11 case, the time expended by K&E, the nature and extent of K&E's services rendered, the value of K&E's services, and the costs of comparable services outside of bankruptcy, which are the relevant factors set forth in section 330 of the Bankruptcy Code.  K&E, therefore, respectfully submits that the requested compensation and reimbursement should be allowed.

## Representations

64.     Although every effort has been made to include all fees and expenses incurred in the Final Fee Period, some fees and expenses might not be included in this Final Fee Application due to delays caused by accounting and processing during the Final Fee Period.  K&E seeks approval of any such fees and expenses not included herein.

65.     In summary, by this Final Fee Application and Fifth Interim Fee Application, K&E requests final allowance of compensation for fees and expenses in the total amount of $5,587,419.87 consisting of (a) $5,396,673.10 for reasonable and necessary professional services rendered by K&E, and (b) $190,746.77 for actual and necessary costs and expenses.

34

WHEREFORE, K&E requests that it be allowed reimbursement for its fees and expenses incurred during the Final Fee Period and that such fees and expenses be paid as administrative expenses of the estates.

Dated: December 23, 2011

**KIRKLAND & ELLIS LLP**
*/s/ David R. Seligman, P.C.*
James H.M. Sprayregen, P.C. (IL Bar No. 6190206)
David R. Seligman, P.C. (IL Bar No. 6238064)
Jeffrey W. Gettleman (IL Bar No. 0944904)
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile:  (312) 862-2200

*Counsel to the Reorganized Debtor*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CORUS BANKSHARES, INC.[1] | ) | Case No. 10-26881 (PSH) |
|  | ) |  |
| Reorganized Debtor. | ) |  |
|  | ) |  |

STATE OF ILLINOIS      )
                              )    ss:
COUNTY OF COOK      )

## <u>DECLARATION</u>

David R. Seligman, P.C, hereby declares the following under penalty of perjury:

1.      I am a partner with the applicant firm, Kirkland & Ellis LLP, and have been admitted to the Bar of the Supreme Court of Illinois since 1996.

2.      I have personally performed certain of the legal services rendered by Kirkland & Ellis LLP as general bankruptcy counsel to the Debtor and am familiar with other work performed on behalf of the Debtor by the lawyers and other persons in the firm.

3.      I have reviewed Local Bankruptcy Rule 5082-1 and the U.S. Trustee Guidelines  and believe that the Final Fee Application and Fifth Interim Fee Application of Kirkland & Ellis LLP complies with such rule and guidelines.  In addition, I believe that the Final Fee Application and Fifth Interim Fee Application of Kirkland & Ellis LLP reflect the comments of the U.S. Trustee made during the course of this chapter 11 case.

---

[1]    The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is: Corus Bankshares, Inc. (3592).  The location of the Reorganized Debtor's corporate headquarters and the service address for the Reorganized Debtor is:  32 Broadway, Suite 1104, New York, NY 10004.

4.      I hereby certify that the Final Fee Application and Fifth Interim Fee Application do not seek reimbursement for secretarial overtime, word processing overtime, messenger services that exceed the costs of a third party messenger, local telephone charges, scanned images, facsimile charges, postage, local transportation (excluding airport transportation at the rate of $45.00 per ride), overtime transportation, overtime meals, working meals with clients, working K&E meals (excluding travel meals), and that all airfare for which the Debtors seek reimbursement was either economy class or purchased at the economy-class rate.   In addition, K&E has reduced photocopying charges from its standard rate of $.15 per page to $.10 per page.

5.      The facts set forth in the foregoing Final Fee Application and Fifth Interim Fee Application are true and correct to the best of my knowledge, information and belief.

Dated:  December 23, 2011                    */s/ David R. Seligman*
                                                    David R. Seligman, P.C

2