## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CORUS BANKSHARES, INC.[1] | ) Case No. 10-26881 (PSH) |
| | ) |
| Reorganized Debtor. | ) **Hearing Date: January 12, 2012, 10:00 a.m., C.T.** |
| | ) **Objection Deadline: January 10, 2012, 4:00 p.m. C.T.** |

## NOTICE OF HEARING ON FINAL FEE APPLICATION OF PLANTE & MORAN, PLLC FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE FINAL FEE PERIOD JUNE 16, 2010 THROUGH NOVEMBER 30, 2010

TO:     THE UNITED STATES TRUSTEE, COUNSEL FOR THE CREDITORS' COMMITTEE, ALL PARTIES LISTED IN THE INTERIM COMPENSATION ORDER AND ALL OTHER PARTIES WHO REQUESTED NOTICE PURSUANT TO RULE 2002 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Pursuant to *The Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (With Technical Modifications)* [Docket No. 674], the public accounting firm of Plante & Moran, PLLC, independent auditors and accountants, for the above-captioned reorganized debtor (the "Reorganized Debtor"), hereby applies for final allowance of compensation and reimbursement of expenses (the "Final Fee Application") for the applications filed during the period from June 16, 2010 through and including November 30, 2010. Summaries of the fees and expenses subject to this Final Fee Application are summarized in the attachment hereto.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider approval of the Final Fee Application will be held before the Honorable Pamela S. Hollis, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 644, Chicago, Illinois 60604, on **January 12, 2012 at 10:00 a.m., C.T.**

---

[1]     The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is:  Corus Bankshares, Inc. (3592).  The location of the Reorganized Debtor's corporate headquarters and the service address for the Reorganized Debtor is:  32 Broadway, Suite 1104, New York, NY 10004.

PLEASE TAKE FURTHER NOTICE that any objection must be filed with the Court by

**January 10, 2012 at 4:00 P.M., C.T.** and served by such time on:   (a) counsel to the

Reorganized Debtor; (b) Plante & Moran, PLLC; (c) the Office of the United States Trustee for

the Northern District of Illinois, 219 South Dearborn Street, Suite 873, Chicago, Illinois 60604,

Attn.: M. Gretchen Silver; (d) counsel to the official committee of unsecured creditors; and

(e) those parties who have requested service of papers in this case pursuant to Bankruptcy Rule

2002 and the case management procedures approved by the Court in this case.

Dated:  December 27, 2011

**KIRKLAND & ELLIS LLP**
*/s/ Jeffrey W. Gettleman*
James H.M. Sprayregen, P.C. (IL Bar No. 6190206)
David R. Seligman, P.C. (IL Bar No. 6238064)
Jeffrey W. Gettleman (IL Bar No. 0944904)
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile:  (312) 862-2200

*Counsel to the Reorganized Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CORUS BANKSHARES, INC.[1] | ) | Case No. 10-26881 (PSH) |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | Hearing Date:  January 12, 2012 at 10:00 a.m., C.T. |
| | ) | Objection Deadline: January 10, 2012, at 4:00 p.m., C.T. |

**COVER SHEET FOR FINAL FEE APPLICATION OF PLANTE & MORAN, PLLC
FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FOR THE FINAL FEE PERIOD
FROM JUNE 16, 2010 THROUGH NOVEMBER 30, 2010**

| | |
|---|---|
| Authorized to provide professional services to: | Corus Bankshares, Inc., Debtor and Debtor in Possession |
| Date of retention: | Order retaining Plante & Moran, PLLC *nunc pro tunc* entered on July 9, 2010 [Docket No. 64] |
| Period for which compensation and reimbursement is sought: | June 16, 2010 through November 30, 2010 |
| Amount of compensation sought as actual, reasonable and necessary: | $102,120.55 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $245.56 |

This is a ___ monthly __ interim _X_ final fee application.

---

[1]   The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is:  Corus Bankshares, Inc. (3592).  The location of the Reorganized Debtor's corporate headquarters and the service address for the Reorganized Debtor is:  32 Broadway, Suite 1104, New York, NY 10004.

Below is a summary of previously filed applications:

| Date Filed | Period Covered | Total Requested (Fees and Expenses) | Total Allowed (Fees and Expenses) | Fee and Expenses Previously Paid |
|---|---|---|---|---|
| September 29. 2010 (Docket No. 180) | 6/16/10 - 7/31/10[2] | $19,370.50 | $15,520.80 | $15,520.80 |
| October 21, 2010 (Docket No. 198) | 8/1/10 - 8/31/10[3] | $20,279.00 | $16,248.80 | $16,248.80 |
| Second Amended First Interim Fee Request December 1, 2010 (Docket No. 279) | 6/15/10 - 8/31/10 | $39,649.50 | $36,802.25[4] | $5,032.65 |
| December 6, 2010 (Docket No. 256) | 9/1/10 - 9/30/10[5] | $39,729.63 | $31,785.03 | $31,785.03 |
| December 23, 2011 (Docket No. 312) | 10/1/10 - 10/31/10[6] | $18,416.50 | $14,738.80 | $14,738.80 |
| January 17, 2011 (Docket No. 321) | 11/1/10 - 11/30/10[7] | $9,145.93 | $7,325.33 | $7,325.33 |

---

[2]   On October 20, 2010, Plante & Moran, PLLC filed the *Certificate of No Objection Regarding the First Application of Plante & Moran PLLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period June 16, 2010 Through July 31, 2010* [Docket No. 195].

[3]   On November 5, 2010, Plante & Moran, PLLC filed the *Certificate of No Objection Regarding the Second Application of Plante & Moran PLLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period August 1, 2010 Through August 31, 2010* [Docket No. 214].

[4]   The fees and expenses requested in the June 15, 2010 through August 31, 2010 Applications were $39,649.50. The Court disallowed $2,765.25 in fees and $82.00 in expenses and approved the remaining fees and expenses requested on an interim basis pursuant to the order entered by this Court on December 16, 2010 [Docket No. 298].

[5]   On December 21, 2010, Plante & Moran, PLLC filed the *Certificate of No Objection Regarding the Third Application of Plante & Moran PLLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period September 1, 2010 Through September 30, 2010* [Docket No. 310].

[6]   On January 10, 2011, Plante & Moran, PLLC filed the *Certificate of No Objection Regarding the Fourth Application of Plante & Moran PLLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period October 1, 2010 Through October 31, 2010* [Docket No. 316].

[7]   On February 3, 2011, Plante & Moran, PLLC filed the *Certificate of No Objection Regarding the Fourth Application of Plante & Moran PLLC for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period October 1, 2010 Through October 31, 2010* [Docket No. 338].

K&E 20860794.5

| Date Filed | Period Covered | Total Requested (Fees and Expenses) | Total Allowed (Fees and Expenses) | Fee and Expenses Previously Paid |
|---|---|---|---|---|
| Second Interim Fee Request April 6, 2011 (Docket No. 407) | 9/1/10 - 11/30/10 | $67,292.06 | $65,563.86[8] | $11,714.70 |

---

[8]  The fees and expenses requested in the September 1, 2010 through November 30, 2010 Applications were $67,292.06.  The Court disallowed $1,728.20 in fees and approved the remaining fees and expenses requested on an interim basis pursuant to the order entered by this Court on April 21, 2011 [Docket No. 425].

Dated:  December 27, 2011

**PLANTE & MORAN PLLC**

Brady J. Nitchman

225 W. Washington St., Suite 2700
Chicago, Illinois 60606
Telephone: (312) 602-3510
Facsimile: (248) 327-8388

*Independent Auditors and Accountants to the
Debtor and Debtor in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CORUS BANKSHARES, INC.[1] | ) | Case No. 10-26881 (PSH) |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | Hearing Date: January 12, 2012 at 10:00 a.m., C.T. |
| | ) | Objection Deadline: January 10, 2012, at 4:00 p.m., C.T. |

**FINAL FEE APPLICATION OF PLANTE & MORAN, PLLC FOR ALLOWANCE OF
ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF
EXPENSES FOR THE FINAL FEE PERIOD FROM JUNE 16, 2010 THROUGH
NOVEMBER 30, 2010**

Pursuant to 11 U.S.C. §§ 327(a) and 328; Rules 2014(a) and 2016 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); the Retention Order (defined

below); the *Order Establishing Procedures for Interim Compensation and Reimbursement*

*of Expenses for Professionals and Official Committee Members* (the "Interim Compensation

Order") [Docket No. 67]; the local bankruptcy rules for the United States Bankruptcy Court

for the Northern District of Illinois (the "Local Bankruptcy Rules"); and *the United States*

*Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of*

*Expenses Filed under 11 U.S.C. § 330* (the "U.S. Trustee Guidelines"), the public

accounting firm of Plante & Moran, PLLC ("P&M"), independent auditors and accountants

for the above captioned debtor and debtor in possession (the "Debtor"), hereby submits its

final fee application (the "Final Fee Application") for final allowance of compensation for

---

[1] The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is: Corus Bankshares, Inc. (3592). The location of the Reorganized Debtor's corporate headquarters and the service address for the Reorganized Debtor is: 32 Broadway, Suite 1104, New York, NY 10004.

4

services rendered in the amount of $102,120.55 and reimbursement of actual and necessary

expenses in the amount of $245.56 for the period from June 16, 2010 through November 30,

2010 (the "Final Fee Period").  In support of this Final Fee Application, P&M respectfully

states as follows.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are 327, 328 and 331 of title

11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy

Rule 2016, and Local Bankruptcy Rule 5082-1.

## BACKGROUND

4.      Prior to its chapter 11 bankruptcy the Debtor was the holding company of

Corus Bank, N.A., a regional Midwestern bank engaged in commercial real estate lending,

deposit gathering, and servicing the check cashing industry.

5.      On June 15, 2010 (the "Petition Date"), the Debtor filed a voluntary petition

with this Court under chapter 11 of the Bankruptcy Code.  During the chapter 11 case, the

Debtor operated its business and managed its property pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner was

made in this chapter 11 case.

6.      On June 29, 2010, the United States Trustee for the Northern District of Illinois

(the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section

1102 of the Bankruptcy Code (the "Committee") [Docket No. 39].

5

7.      Commencing on the Petition Date, the Debtor worked actively with the Committee and its advisors on possible restructuring scenarios in an expansive effort to maximize value for all parties in interest.  After extensive discussions with the Committee, which favored liquidation, the Debtor filed the *Debtor's Amended Plan Under Chapter 11 of the Bankruptcy Code* [Docket No. 285] on December 15, 2010, which proposed the orderly wind-down and liquidation of the Debtor.  On December 16, 2010, the Bankruptcy Court approved the disclosure statement for this proposed liquidation plan [Docket No. 303], and on December 23, 2010, the Debtor commenced solicitation [Docket No. 322].  Subsequently, six creditors (the holders of a substantial portion of the Debtor's trust originated preferred shares (the "TOPrS")) voted to reject the Debtor's proposed liquidation plan, while only a single creditor in that class voted to accept the liquidation plan, which caused the liquidation plan to be rejected.

8.      In the wake of this rejection, extensive discussions ensued among the Debtor, the Committee, and Tricadia (a TOPrS holder) about the propriety of a plan of liquidation. These discussions included meetings among the Debtor, Tricadia, and the Committee, and focused on an extensive analysis of the costs and benefits of a plan of liquidation versus a plan of reorganization.  Tricadia and a majority of the other creditors who had voted to reject the liquidation plan, plus one additional creditor, determined that a plan of reorganization would best maximize value for the Debtor's estate.

9.      The Debtor, Tricadia, and certain other creditors thereafter negotiated the terms of a reorganization plan that each believed would maximize recoveries for the Debtor's estate, and each entered into an agreement to support a plan proposed by the Debtor that was consistent with the agreed-upon terms.  Indeed, on May 25, 2011, the Debtor filed plan support letters signed by each of these creditors containing term sheets that outlined the material terms of a plan such

6

creditors would support [Docket No. 464]. In addition, also on May 25, 2011, the Debtor filed a plan of reorganization [Docket No. 463] (the "Plan"), which reflected the material terms agreed to by such creditors.

10.     The Debtor then negotiated with the remainder of the creditors that had actually voted on, and explicitly rejected, the liquidation plan, to garner their support. In addition, the Debtor worked extensively with the Committee to resolve various issues raised by the Committee regarding the Plan. All such issues were resolved, and the Committee ultimately supported the Plan.

11.     The consensual chapter 11 Plan provided for a reorganization of the Debtor, whereby the Reorganized Debtor eliminated its existing unsecured debt obligations and converted approximately $362 million of TOPrS into equity in the reorganized company. The Plan also provided that the Reorganized Debtor would pay cash to holders of another approximately $57 million in unsecured claims. In order to effectuate distributions under the Plan, the Plan provides that all of the assets of the Debtor's estate would vest in the Reorganized Debtor. The Reorganized Debtor will continue to operate the Debtor's business as a going concern, and will pursue ongoing litigation with the Federal Deposit Insurance Corporation (the "FDIC"), and make distributions under the Plan. The Debtor's rights to pursue certain causes of action against former officers and directors who were not released in the Plan vested in a Litigation Trust.

12.     On September 27, 2011, the Court entered the *Order Confirming the Debtor's Third Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [Docket No. 689] (the "Confirmation Order"). On October 27, 2011 (the "Effective Date"), the Plan became effective.

7

13.    On the Effective Date, there were no more than approximately thirty (30) holders of equity interests.  The Reorganized Debtor has emerged as a privately held company, with a new board of directors, who remain responsible for implementing the Plan and operating the business of the Reorganized Debtor.

14.    The outcome of this case is truly remarkable in light of the global economic downturn and its impact on the U.S. financial sector, and represents one of the few successful bank holding company reorganizations following the credit crisis of 2008 and 2009.  Following emergence from chapter 11, the Reorganized Debtor will continue in real estate-related businesses (its business prior to entering bankruptcy), and will be primarily engaged in purchasing or acquiring interests in real estate and mortgages, with possible secondary activities in related financial services.

## RETENTION OF AND CONTINUING DISINTERESTEDNESS OF PLANTE & MORAN, PLLC

15.    By this Court's order dated July 9, 2010, the Debtor was authorized to retain P&M as its independent auditors and accountants effective as of the Petition Date [Docket No. 64] (the "Retention Order").  The Retention Order authorizes the Debtor to compensate P&M in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the U.S. Trustee Guidelines and any applicable orders of this Court.

16.    As disclosed in the *Declaration of Brady J. Nitchman in Support of the Application of the Debtor for an Order Authorizing the Employment and Retention of Plante & Moran, PLLC as Independent Auditors and Accountants for the Debtor Nunc Pro Tunc to the Petition Date* [Docket No. 26, Exhibit E] (the "Initial Declaration"), filed on June 17, 2010,

8

P&M does not hold or represent any interest adverse to the Debtor's estate and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

17.     P&M may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtor and Reorganized Debtor in this chapter 11 case.   In the Initial Declaration, P&M disclosed its connections to parties in interest that it had been able to ascertain using its reasonable efforts.

18.     P&M performed the services for which it is seeking compensation on behalf of or for the Debtor and its estate and not on behalf of any committee, creditor, or other person.

19.     Except as provided herein or in the application to retain P&M, P&M has received no payment and no promises for payment from any source other than the Debtor for services rendered or to be rendered in any capacity whatsoever in connection with this chapter 11 case.

20.     Pursuant to Bankruptcy Rule 2016(b), P&M has not shared, nor has P&M agreed to share in connection with this chapter 11 case (a) any compensation it received or may receive with another person other than with the professionals of P&M or (b) any compensation another person or party has received or may receive.

**PLANTE & MORAN, PLLC MONTHLY FEE APPLICATIONS**

21.     Pursuant to the procedures set forth in the Retention Order and the Interim Compensation Order, professionals could apply for monthly compensation and reimbursement (each such application, a "Monthly Fee Application").   If no notice party objected to a professional's Monthly Fee Application within 14 days after the date of service of such Monthly Fee Application, the applicable professional could submit to the Court a certification of no objection, whereupon the Debtor were authorized to pay the applicable professional interim compensation of 80% of the fees requested and reimbursement of 100% of the expenses requested.

K&E 20860794.5

22.     Furthermore, and also pursuant to the Interim Compensation Order, professionals were to file and serve with the Court an interim request (each, an "Interim Fee Application") for interim Court approval and allowance of the Monthly Fee Applications filed during the period covered by the Interim Fee Application.  If the Court granted the relief requested in the Interim Fee Application, the Debtor was authorized and directed to pay the applicable professional 100% of the fees and expenses requested in the Monthly Fee Applications covered by that Interim Fee Application, less any amounts previously paid in connection with the Monthly Fee Applications. Any payment made pursuant to a Monthly Fee Application or an Interim Fee Application is subject to final approval following a hearing on the professional's final fee application.

23.     Prior to the filing of this Final Fee Application, P&M filed five Monthly Fee Applications and two Interim Fee Applications. The chart attached hereto as **Exhibit A** summarizes the current status of these Monthly and Interim Fee Applications.[2]  Subject to the representations made herein, all fees and expenses sought in each of the Monthly and Interim Fee Applications are included as part of this Final Fee Application.

### PLANTE & MORAN, PLLC TOTAL PAYMENT RECEIVED

24.     As of the date hereof, P&M has received $102,366.11 from the Debtor for fees and expenses incurred during the Final Fee Period.

### REASONABLE AND NECESSARY SERVICES RENDERED

25.     The professional services that P&M rendered during the Final Fee Period are grouped into the numbered and titled activities described below.[3]

---

[2]     The Monthly and Interim Fee Applications as listed in **Exhibit A** attached hereto and incorporated herein by reference, are available (a) on the docket of the United States Bankruptcy Court for the Northern District of Illinois under Case No. 10-26881 (PSH) or (b) upon request from P&M by contacting the undersigned partner of P&M.

[3]     At the time the Debtor filed this chapter 11 case, it was a public company and was required to have audited financial statements and to file certain public reports relating to its business and financial condition.  P&M's

10

26.     <u>Matter 1 – Audit Procedures:</u>   This Subject Matter includes services performed by P&M in connection with the audit of the Debtor's December 31, 2009 Form 10-K.  Services performed all relate to procedures required in order to complete the aforementioned audit and include, without limitation:  (a) performance of specific audit procedures related to account balances as of and at the aforementioned date, (b) consultations among P&M engagement team members concerning various audit and related financial statement presentation matters, (c) research by P&M engagement team members concerning various audit and related financial statement presentation matters, (d) consultations between members of the P&M engagement team and members of the Debtor's management, attorneys and other relevant parties concerning various audit and related financial statement presentation matters, and (e) attendance at audit committee and board of directors meetings by various P&M personnel involved in delivering the services described above.

27.     <u>Matter 2 – SAS 100 Review Procedures (10 Qs):</u>   This Subject Matter includes services performed by P&M in connection with the review of the Debtor's June 30, 2009 and September 30, 2009 Forms 10-Q.  Services performed all relate to procedures required in order to complete the aforementioned reviews and include, without limitation:  (a) performance of specific review procedures related to account balances as of and at the aforementioned dates, (b) consultations among P&M engagement team members concerning various review and related financial statement presentation matters, (c) research by P&M engagement team members concerning various review and related financial statement presentation matters and

---

services were almost exclusively related to these matters.  P&M was retained by the Debtor due to the resignation of its previous auditor.  After working with the Debtor for less than six months, it appeared that the Debtor's financial statements would not be able to be audited, and it appeared that the Debtor could no longer prospectively fulfill its public reporting requirements.  These conditions were not resolved during the chapter 11 case, and thus after November, 2010 the Debtor no longer required P&M to perform accounting and auditing services.

K&E 20860794.5

(d) consultations between members of the P&M engagement team and members of the Debtor's management, attorneys and other relevant parties concerning various review and related financial statement presentation matters.

28.     <u>Matter 3 – Employee Benefit Plan Audits Procedures:</u>  This Subject Matter includes services performed by P&M in connection with the audits of the Debtor's two employee benefit plans, the Corus Bankshares, Inc. Retirement Income Plan and Trust and the Corus Bankshares, Inc. Employees' Savings Plan and Trust (the "Plans") as of December 31, 2010. Services performed all relate to procedures required in order to complete the aforementioned audits of the Plans as of December 31, 2010 and include, without limitation:  (a) performance of specific audit procedures related to the Plans' account balances as of and for December 31, 2010, (b) consultations among P&M engagement team members concerning various audit and related financial statement presentation matters, (c) research by P&M engagement team members concerning various audit and related financial statement presentation matters, (d) consultations between members of the P&M engagement team and members of the Debtor's management concerning various audit and related financial statement presentation matters, and (e) attendance at audit committee and board of directors meetings by various P&M personnel involved in delivering the services described above.

29.     <u>Matter 4 – Fee, Employment Applications:</u>  This Subject Matter includes services performed by P&M in connection with P&M's retention and fee applications, including, without limitation:  (a) editing the *Application of the Debtor For Entry of an Order Authorizing the Employment and Retention of Plante & Moran, PLLC as Independent Auditors and Accountants for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 26] (the "P&M Retention Application"); and (b) summarizing and reviewing data to be included in

the monthly and interim fee applications and preparing and filing the monthly and interim fee applications.

## ACTUAL AND NECESSARY EXPENSES

30.     It is P&M's policy to charge its clients for identifiable, non-overhead expenses incurred in connection with the client's engagement that would not have been incurred except for representation of that particular client.  It is also P&M's policy to charge its clients only the amount actually incurred by P&M in connection with such items. Examples of such expenses are overnight mail, transportation, airfare, meals, parking and lodging.

31.     A summary of expenses by type, as well as a detailed itemization and description of the disbursements made by P&M on the Debtor's behalf during the Final Fee Period is included in each Monthly Fee Application (incorporated herein by reference). The disbursements for the Final Fee Period total $245.56.

## REQUESTED COMPENSATION AND REIMBURSEMENT OF
## PLANTE & MORAN, PLLC SHOULD BE ALLOWED

32.     Section 331 of the Bankruptcy Code provides for compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  *See* 11 U.S.C. § 331.  Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330(a)(3) also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including:

(a)      the time spent on such services;

(b)      the rates charged for such services;

(c)      whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d)      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(e)      with respect to a professional person, whether the person possessed and had demonstrated the necessary skills and experience; and

(f)      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

33.      Final award of the fees and expenses requested herein is supported by the results achieved for the Debtor, their creditors and other stakeholders, given the Debtor's circumstances and uncertain prospects as of the Petition Date.  As an initial matter, the complexities of this chapter 11 case required substantial outlays of time and effort by P&M professionals performing services in connection with their assistance to the Debtor as debtor in possession in this chapter 11 case, related to the Debtor's reporting requirements as a public company.  As noted above, P&M's expertise and leadership as independent auditors and accountants facilitated the Debtor's smooth and seamless transition into chapter 11.  As a result of these initial efforts, the Debtor was able to minimize the negative impacts resulting from the commencement of this chapter 11

14

case.  Additionally, with the assistance of P&M, the Debtor successfully fulfilled certain reporting obligations during the period when the Debtor filed such reports.

34.    A close look at the services performed by P&M during the course of this chapter 11 case makes clear that P&M used its restructuring expertise in an efficient and effective manner to achieve exemplary results for the Debtor under the circumstances.  P&M respectfully submits that the services for which it seeks compensation in the Final Fee Application were, at the time rendered, necessary for and beneficial to the Debtor and its estate and were rendered in order to protect and preserve the value of the Debtor's estate.  P&M further believes that the services rendered to the Debtor were performed economically, effectively, and efficiently and benefited the Debtor and its estate and creditors.

35.    The hourly rates and corresponding rate structure utilized by P&M in this chapter 11 case are equivalent to the hourly rates and corresponding rate structure predominantly used by P&M for auditing and accounting services, regardless of whether a fee application is required. These rates and the rate structure reflect that such particular matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in this chapter 11 case.

36.    Moreover, P&M's hourly rates are set at a level designed to compensate P&M fairly for the work of its professionals and to cover certain fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged by other financial advisory firms.

15

37.    In addition, P&M worked efficiently.   P&M carefully assigned the work to appropriate professionals according to the experience and level of expertise required for each particular task.

38.    P&M respectfully submits that the professional services rendered by P&M on behalf of the Debtor's estate during this chapter 11 case were necessary and appropriate given the complexity of this chapter 11 case, the time expended by P&M, the nature and extent of P&M's services rendered, the value of P&M's services, and the costs of comparable services outside of bankruptcy, which are the relevant factors set forth in section 330 of the Bankruptcy Code.  P&M, therefore, respectfully submits that the requested compensation and reimbursement should be allowed.

39.    In summary, by this Final Fee Application, P&M requests final allowance of compensation for fees and expenses in the total amount of $102,366.11 consisting of (a) $102,120.55 for reasonable and necessary professional services rendered by P&M, and (b) $245.56 for actual and necessary costs and expenses.

16

WHEREFORE, P&M requests that its approved fees and expenses incurred during the Final Fee Period be paid as administrative expenses of the estate.

Dated: December 27, 2011

PLANTE & MORAN PLLC

Brady J. Nitchman

225 W. Washington St., Suite 2700
Chicago, Illinois 60606
Telephone: (312) 602-3510
Facsimile: (248) 327-8388

*Independent Auditors and Accountants to the
Debtor and Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CORUS BANKSHARES, INC.[1] | ) | Case No. 10-26881 (PSH) |
|  | ) |  |
| Reorganized Debtor. | ) |  |

## DECLARATION

Brady J. Nitchman hereby declares the following under penalty of perjury:

1.      I am a partner with the applicant firm, Plante & Moran, PLLC.

2.      I have personally performed certain of the accounting services rendered by Plante & Moran, PLLC as independent auditors and accountants to the Debtor and am familiar with other work performed on behalf of the Debtor by the accountants and other persons in the firm.

3.      The facts set forth in the foregoing Application are true and correct to the best of my knowledge, information and belief.

Executed on December 27, 2011

Brady J. Nitchman

---

[1]    The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is: Corus Bankshares, Inc. (3592). The location of the Reorganized Debtor's corporate headquarters and the service address for the Debtor is: 32 Broadway, Suite 1104, New York, NY 10004.

K&E 20860525